STATE v. COMEAUX

[224 N.C. App. 595 (2012)]

STATE OF NORTH CAROLINA

v.

ALLAN COMEAUX

No. COA11-1289

Filed 31 December 2012

**1. Constitutional Law—public trial—closure of trial during victim's testimony—findings sufficient**

The trial court did not err by closing the courtroom during the testimony of the victim where the court's findings showed that the State advanced an overriding interest that was likely to be prejudiced; that the closure of the courtroom was no broader than necessary to protect the overriding interest; that the trial court considered reasonable alternatives to closing the courtroom; and that the trial court made findings adequate to support the closure. Even in the absence of the findings challenged by defendant, the remaining, detailed findings were sufficient to uphold the trial court's order.

**2. Indictment and Information—multiple charges—defendant sufficiently informed**

Indictments for indecent liberties sufficiently informed defendant of the conduct for which he was charged where each of the indictments was couched in the language of the statute, and each indictment alleged that defendant committed the offense within a specific, non-overlapping six-month period between July 2005 and December 2007.

**3. Constitutional Law—unanimous verdict—multiple charges—instructions and verdict sheets**

Defendant's contention that he was deprived of his right to a unanimous jury verdict in a prosecution for five indecent liberties charges was overruled where the trial court's instructions explicitly distinguished among the five charges, directed the jurors to find defendant guilty on each count only if they determined that defendant had committed the requisite acts within the designated time period, each verdict sheet was paired with a particular indictment, and it was evident that the jury was able to distinguish among the indictments and verdict sheets, as it convicted defendant on only four of the five counts.

Appeal by Defendant from judgments entered 14 March 2011 by Judge C. Philip Ginn in Buncombe County Superior Court. Heard in the Court of Appeals 21 March 2012.

> *Roy Cooper, Attorney General, by Robert C. Montgomery, Special Deputy Attorney General, and Jane Rankin Thompson, Assistant Attorney General, for the State.*

> *Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse Jr., for the defendant.*

THIGPEN, Judge.

Allan Comeaux ("Defendant") appeals from judgments convicting him of four counts of taking indecent liberties with a child. On appeal, Defendant contends that his Sixth Amendment right to a public trial was violated because the trial court closed the courtroom during the victim's testimony without making findings of fact as required under *Waller v. Georgia*, 467 U.S. 39 (1984). Defendant also contends that the trial court erred by denying his motions to dismiss, or by failing to arrest judgment, because the indictments, jury instructions, and verdict forms were "duplicitous" and "generic" in violation of his constitutional and statutory rights to a unanimous jury. For the following reasons, we find no error.

## I. Factual & Procedural Background

The State's evidence at trial tended to show that K.D., the victim in this case, was born on 24 January 1992. When she was approximately 9 or 10 years old, K.D. went to live with a distant relative, Connie Comeaux ("Connie"), and Connie's husband, Defendant, in Napoleonville, Louisiana. K.D. testified that Defendant began sexually abusing her when she was 10 years old and living in Napoleonville. The sexual abuse which allegedly occurred in Napoleonville included K.D. performing oral sex on Defendant; Defendant fondling and sucking K.D.'s breasts; and one incident of Defendant ejaculating on her.

When K.D. was eleven, she moved with Connie and Defendant to New Jersey, where the sexual abuse continued. They then moved to Montreat when K.D. was thirteen, where the abuse stopped during the six months that they lived there. In early 2006, when K.D. was still thirteen, she moved with Connie and Defendant to Asheville, North Carolina. K.D. testified, "[t]hat's when it got really bad[,]" with Defendant frequently abusing her at night. The sexual abuse in North

Carolina included Defendant putting his hands down K.D.'s pants; touching and sucking her breasts; and touching the outside of her vagina. K.D. testified that the sexual abuse lasted approximately seven years and that it did not stop until she left the Comeaux's home on 1 July 2009.

In August of 2009, K.D. contacted the Buncombe County Department of Social Services ("DSS") to report the sexual abuse. Following K.D.'s report, DSS contacted the Buncombe County Sheriff's Department. K.D. was subsequently interviewed by a police officer and a social worker from DSS. K.D.'s explanation of the history of sexual abuse to the police officer and social worker was consistent with her testimony at trial.

Defendant was charged with five counts of taking indecent liberties with a child. At trial, the jury convicted Defendant of four counts of taking indecent liberties with a child. Defendant was sentenced to four consecutive sentences of 16 to 20 months imprisonment and ordered to register as a sex offender for thirty years. Defendant appeals from these judgments.

On 8 May 2012, this Court entered an order remanding the case "for the limited purpose of the trial court indicating whether it made findings consistent with State v. Jenkins, 115 N.C. App. 520, 525, 445 S.E.2d 622, 625, disc. review denied, 337 N.C. 804, 449 S.E.2d 752 (1994)[,] in clearing the courtroom." This Court further decreed in its 8 May 2012 order that "[t]he trial court shall enter an order stating whether it made such findings, and if so, it shall reduce those findings of fact and conclusions of law to writing[.]" Defendant's appeal was "held in abeyance pending receipt of the trial court's order."

· On 30 May 2012, Judge Philip Ginn entered an order stating that the "facts needed for granting the State's Motion and ordering the limited closure of the courtroom during the testimony of the Victim" were "establish[ed][.]" However, the trial court failed to memorialize the facts in writing in its 20 May 2012 order, instead stating that, "in the opinion of [the trial court]," it was not "required to engage in any Constitutional analysis or make any Constitutionally-based findings as contemplated by the Jenkins Court[.]"

On 20 August 2012, this Court entered a second order again remanding the case to the trial court "to make findings of fact and conclusions of law in accordance with State v. Jenkins, 115 N.C. App. 520, 525, 445 S.E.2d 622, 625, disc. review denied, 337 N.C. 804, 449 S.E.2d 752 (1994), utilizing the four-part test enumerated in Waller v.

*Georgia,* 467 U.S. 39, 48, 81 L. Ed. 2d 31, 39, 104 S. Ct. 2210, 2216 (1984)." This Court again instructed that "[t]he trial court shall then reduce those findings of fact and conclusions of law to writing[,]" and Defendant's "appeal shall again be held in abeyance pending receipt of the trial court's order."

On 19 September 2012, Judge Philip Ginn entered an order containing written findings of fact as ordered by this Court.

## II. Analysis

### A. Closure of the Courtroom During K.D.'s Testimony

**[1]** On appeal, Defendant contends that his constitutional right to a public trial was violated when the trial court closed the courtroom during K.D.'s testimony without making findings of fact as required by *Waller v. Georgia,* 467 U.S. 39 (1984).[1] We disagree.

This Court reviews alleged constitutional violations *de novo.* *State v. Tate,* 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007). Pursuant to the Sixth Amendment of the United States Constitution, a criminal defendant is entitled to a "public trial." U.S. Const. amend. VI.

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury.

---

1. The State asserts that Defendant did not preserve this constitutional argument for appeal. We disagree. Defendant objected to closure of the proceedings, and the trial court noted Defendant's "exception to the ruling of the court to clear the courtroom." Defendant's right to a public trial is a Sixth Amendment right. U.S. Const. amend. VI. It is apparent, in this context, that Defendant's objection to "clear[ing] the courtroom" was an objection to the prosecutor's attempt to close the trial in violation of Defendant's constitutional right to a public trial. *See* N.C. R. App. P. 10(a)(1) (2012) (stating that an objection is preserved so long as the specific ground for the objection is "apparent from the context"); *see also State v. Rollins,* ___ N.C. App. ___, ___, 729 S.E.2d 73, 76 (2012) (holding that the defendant's objection that the "[c]ourt should be open" was sufficient to preserve the constitutional argument for appeal); *compare State v. Cornell,* ___ N.C. App. ___, ___, 729 S.E.2d 703, 707 (2012) (holding that the defendant's reference to the "First Amendment" during his motion to dismiss based upon the alleged insufficiency of the evidence did not preserve a constitutional issue for appeal because the trial court did not pass upon the constitutional question). Defendant's constitutional argument was thus preserved and is properly before this Court on appeal.

*Waller*, 467 U.S. at 46 (citations and quotation marks omitted). "[T]he guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 270 (1948). "[T]he public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Estes v. Texas*, 381 U.S. 532, 588 (1965) (Harlan, J., concurring). "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. at 270.

> The central aim of a criminal proceeding is to try the accused fairly and the public trial guarantee serves the purpose of ensuring that judge and prosecutor carry out their duties responsibly, encouraging witnesses to come forward, and discouraging perjury. Hence, the right to a public trial is not only to protect the accused but to protect as much the public's right to know what goes on when men's lives and liberty are at stake, for a secret trial can result in favor to as well as unjust prosecution of a defendant.

*Bell v. Jarvis*, 236 F.3d 149, 165 (4th Cir. 2000) (citations and quotation marks omitted) (alterations removed). "The violation of the constitutional right to a public trial is a structural error, not subject to harmless error analysis." *Id.*

"Although there is a strong presumption in favor of openness, the right to an open trial is not absolute. The trial judge may impose reasonable limitations on access to a trial in the interest of the fair administration of justice." *Bell v. Evatt*, 72 F.3d 421, 433 (4th Cir. 1995). "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45.

Accordingly, within the boundaries of these constitutional principles, N.C. Gen. Stat. § 15-166 (2011) permits the exclusion of certain persons from the courtroom in cases involving rape and other sexually-based offenses:

> In the trial of cases for rape or sex offense or attempt to commit rape or attempt to commit a sex offense, the trial judge may, during the taking of the testimony of the

prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case.

*Id.* Before a trial court may allow a courtroom closure pursuant to N.C. Gen. Stat. § 15-166, however, the court must comply with the rule set forth in *Waller, see, e.g., State v. Smith,* 180 N.C. App. 86, 98, 636 S.E.2d 267, 275 (2006); *State v. Starner,* 152 N.C. App. 150, 154, 566 S.E.2d 814, 816-17 (2002); *State v. Jenkins,* 115 N.C. App. 520, 525, 445 S.E.2d 622, 625 (1994), which requires the following:

> (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced;
>
> (2) the closure must be no broader than necessary to protect that interest;
>
> (3) the trial court must consider reasonable alternatives to closing the proceeding; and
>
> (4) the trial court must make findings adequate to support the closure.

*Jenkins,* 115 N.C. App. at 525, 445 S.E.2d at 625 (citing *Waller,* 467 U.S. at 48). "[W]hile the trial court need not make exhaustive findings of fact, it must make findings sufficient for this Court to review the propriety of the trial court's decision to close the proceedings." *Rollins,* ___ N.C. App. at ___, 729 S.E.2d at 79.

Here, the trial court memorialized the following pertinent findings of fact in its 19 September 2012 order:

> 1. The matter for courtroom closure came before this Court at trial specifically for the closure of the courtroom for the limited purpose of the State's written Motion for Closure of the Courtroom for the Testimony of the Victim pursuant to <u>N.C.G.S.</u> § 15-166 (2010).
>
> 2. The victim in this matter was a young girl who, if she had not already turned 18, was near that age at the time of the trial and the testimony of the victim involved matters of a personal and delicate sexual nature.
>
> 3. The victim also had been in the custody of the defendant and his wife since an early age and her testimony included matters which began when she was less than ten years old.

4. The Defendant's wife, the sole party whom the Defendant objected to . . . leaving the Courtroom during the Victim's testimony, had engaged in behavior designed to intimidate the then minor Victim after the Defendant's wife believed the minor Victim had reported the Defendant's conduct to law enforcement. This behavior on the part of the Defendant and his wife was testified to as part of these proceedings and included but is not limited to:

> a. Canceling the minor Victim's health insurance, knowing she was a severe asthmatic requiring regular medication and medical treatment;
>
> b. Filing a false police report against the minor Victim alleging she had stolen jewelry, when in fact she had not; testimony from a Detective from another agency who handled that theft allegation, testified to the same and that he had closed the case against the minor Victim filed by the Defendant and his wife;
>
> c. Reporting the minor Victim as a run-away and requiring her to leave the home environment of the Victim's friend's parents whom the Victim had been staying with following the Defendant and his wife removing [her] from their home due to her allegations against the Defendant; the Defendant and his wife further required the Victim live in a teenage runaway shelter and later group home where they restricted her access to mail and contact from individuals supportive of the minor Victim;
>
> d. Transferring the minor Victim into another high school to remove her from supportive friends; and
>
> e. Discontinuing financial support of the minor Victim.

5. Further, the Victim testified outside the presence of the jury on issues related to 404(b) and 412. During that testimony and at other points during the Court's colloquy with her, she became very emotional, crying and becoming visibly upset and shaken in the Courtroom.

6. The testimony of the victim involved sexual abuse by one standing in a parental role and which occurred at a time in which she was legally incapable of granting consent.

7. The testimony of the victim was of a graphic sexual nature making it uncomfortable for the witness to discuss openly.

8. The particular circumstances of this case involved sexual abuse of a minor who had been in the custody of both the defendant and wife and that at the time of the abuse the defendant had taken on the role of a parent.

9. The delicate nature of this relationship between the defendant, his wife and the victim [was] an integral part of her testimony during the trial.

10. There existed a particularly fragile mental and emotional state of the victim due to the circumstances of the crime and the prior attempted intimidation of the victim on the part of the defendant and his wife.

11. That the defendant had made a motion to sequester witnesses and had also listed the wife of the defendant as one of his witnesses.

12. The wife of the defendant was also called as a witness by the defendant during the course of his presentation of evidence.

. . . .

14. There were less than 8 spectators excluded from the courtroom and the only person excluded who was favorable to the defendant was his wife, who should have also been sequestered pursuant to the defendant's motion to sequester witnesses.

15. There was no media present in the courtroom who were excluded and no one from the media contacted the court at any time seeking admission.

16. The parties excluded by the Court had no actual knowledge of the specific facts committed by the defendant that led to the particular charges before the Court, including his wife.

17. A chilling effect on the completeness and openness of the victim's testimony is likely to occur if she feels overly intimidated, embarrassed or emotional by the presence of the defendant's wife during the course of her testimony.

18. The victim will be less inhibited in testifying completely and the "chilling effect" will be reduced.

19. The overriding interest in providing an environment for truthful testimony of the victim and the pursuit of justice would be prejudiced by allowing the wife of the defendant and even other spectators who supported the defendant to be present during the testimony of the victim.

20. The courtroom was closed only temporarily for the limited purpose of the testimony of the victim and there were many other witnesses whose testimony was open to the public.

21. The defendant has access to a transcript of the testimony of the victim and the Court would have allowed a reasonable time in which the defendant, and any other person directed by the defendant and his counsel, could review its contents.

22. That no reasonable alternatives to closing the courtroom during the victim's testimony exist.

We believe these findings of fact show that the State advanced an overriding interest that was likely to be prejudiced; that the closure of the courtroom was no broader than necessary to protect the overriding interest; that the trial court considered reasonable alternatives to closing the courtroom; and that the trial court made findings adequate to support the closure. We note Defendant's contention that findings of fact 10, 16, 17, and 19 are unsupported by the evidence of record, and, as such, they cannot support the trial court's conclusion that, in seeking closure, the State "advanced an overriding interest that [was] likely to be prejudiced" absent closure. However, "findings of fact" 17 and 19 set forth legal conclusions, and the portion of finding of fact 16 challenged by Defendant, namely, the finding that Connie "had no actual knowledge of the specific facts committed by the defendant that led to the particular charges before the Court," is supported by Connie's testimony on direct examination, during which

she denied knowledge of the abuse and stated that she "definitely" would have known if any sexual abuse or inappropriate touching of the victim had occurred in her house. Regardless, we conclude that the trial court's remaining, detailed findings are sufficient to uphold its order, even in the absence of the findings at issue. We accordingly hold that the trial court complied with the requirements of *Jenkins* and *Waller*,[2] and Defendant's contention is overruled.

## II. Indictments, Jury Instructions, and Verdict Forms

**[2]** Defendant next contends that the trial court erred by denying his motions to dismiss, or by failing to arrest judgment, because the indictments, jury instructions, and verdict forms were "duplicitous" and "generic" in violation of his constitutional and statutory rights to a unanimous jury. We disagree.

We first address Defendant's challenge to the sufficiency of the five indecent liberties indictments upon which he was charged. Defendant argues that the indictments were insufficient because they included "non-specific allegations" and the only distinction among them was the time frame within which the alleged acts occurred. This argument is meritless.

The sufficiency of an indictment is reviewed *de novo* on appeal. *State v. Marshall*, 188 N.C. App. 744, 748, 656 S.E.2d 709, 712 (2008). "In general, an indictment couched in the language of the statute is sufficient to charge the statutory offense." *State v. Blackmon*, 130 N.C. App. 692, 699, 507 S.E.2d 42, 46 (1998). It is "generally true tha[t] an indictment need only allege the ultimate facts constituting the elements of the criminal offense and that evidentiary matters need not be alleged." *Id.* Moreover, our courts have consistently held that the requirement of temporal specificity described under N.C. Gen. Stat. § 15A–924(a)(4) "diminishes in cases involving sexual assaults on children." *Id.* at 696, 507 S.E.2d at 45.

Defendant was charged pursuant to N.C. Gen. Stat. § 14-202.1 (2011), which provides as follows:

---

2. We also note that the trial court's findings of fact 4 and 13 set forth the erroneous conclusion of law that Defendant "did not raise a constitutional issue as to the closing of the courtroom[.]" Although this conclusion is contrary to *Jenkins*, 115 N.C. App. at 525, 445 S.E.2d at 625, and *Waller*, 467 U.S. at 48, as interpreted and applied in *Rollins*, ___ N.C. App. ___, 729 S.E.2d 73, this does not alter our determination that the trial court's findings were sufficient to justify closure under *Jenkins* and *Waller*.

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

*Id.* Applying the foregoing principles to the five indictments brought against Defendant, we conclude that the indictments sufficiently informed Defendant of the conduct for which he was charged. Each of the indictments was couched in the language of the statute, and each indictment alleged that Defendant committed the subject offense within a specific, non-overlapping six month period between July 2005 and December 2007. For example, one indictment alleged the date of the offense as "[o]n, about or during 7/1/05 through 12/31/05[,]" while another stated, "[o]n, about or during 1/1/06 through 6/30/06[.]" Accordingly, we find no error in the indictments. *See Blackmon*, 130 N.C. App. at 697, 507 S.E.2d at 45 (holding that the eight indictments charging the defendant with multiple counts of first-degree statutory sexual offense and taking indecent liberties with a child were sufficiently specific where the only reference made to time or dates was that the "defendant committed the subject offenses between January 1 and September 12, 1994").

[3] Defendant further contends that the trial court's "generic" jury instructions and verdict sheets deprived him of his constitutional right to a unanimous jury verdict. More specifically, Defendant contends that because the State's evidence "described multiple occurrences of the same form of touching[,]" because the jury instructions provided the "language of the indecent liberties statute[,]" and because the "only distinguishing feature" of the verdict forms "was the dates[,]" the instructions and verdict forms lacked "unanimity as to which criminal offense, and particularly the actus reus of any crime . . . [D]efendant committed." We are not persuaded.

"Article I, Section 24 of the North Carolina Constitution states that '[n]o person shall be convicted of any crime but by the unani-

mous verdict of a jury in open court.' " *State v. Wilson,* 363 N.C. 478, 482-83, 681 S.E.2d 325, 329 (2009) (quoting N.C. Const. art. I, § 24) (alteration in original).

The transcript reveals that the trial court delivered the following instructions to the jury at the close of all the evidence:

> Now, ladies and gentleman, the crime of indecent liberties is a single offense, which may be proved by evidence of the commission of any one or a number of acts. And the requirement of . . . unanimity . . . is met even if some jurors find that one type of . sexual conduct occurred and others find that another has transpired.
>
> In these cases, the defendant has been charged with five separate counts of taking indecent liberties with a child. While you need not agree, each agree to a specific act or attempt to act, you must agree unanimously that at least five distinct and separate acts or attempts occurred in order to convict the defendant of all five counts. Not only that, but *as to each count, you must unanimously agree that the specific act or attempt to act occurred during the time period set forth in the particular charge.*
>
> Let me see if I can explain that to you. And in doing so, I'm just going to use the file numbers for your reference. And I guess this is as good a place as any to tell you, there are going to be five verdict sheets that are going to be sent back to you eventually, and these are set forth: The State of North Carolina vs. Joel Allen Comeaux. And they're going to have Buncombe County at the top, and there's going to be a file number up in the right-hand corner. And that's how you will delineate the difference in them. They're going to be identical except for that file number in the upper right-hand corner. And it just simply says:
>
> We, the jury, unanimously return as our verdict that the defendant is:
>
> 1. Guilty of taking indecent liberties with a minor.
>
> 2. Not guilty.
>
> And then there will be a place for the date and the signature of your foreperson.

But in taking these file numbers individually, in 09-CRS-63936, you must find that the events occurred during the time period between July 1, 2005 and December 31, 2005.

Likewise, in 63937, you must find that the events occurred between January 1, 2006 and June 30th of 2006.

In 63938, between July 1, 2006 and December 31, 2006.

In 63939, between January 1, 2007 and June 30th, 2007.

Finally, in 63940, between July 1, 2007 and December 31, 2007.

(Emphasis added).

The trial court's instructions explicitly distinguished among the five indecent liberties charges and directed the jurors to find Defendant guilty on each count only if they determined that Defendant had committed the requisite acts within the designated time period. The designated time periods were set forth in the indictments, and, as the court informed the jurors in its instructions, each verdict sheet was paired with a particular indictment as indicated in the top right-hand corner of the verdict sheet. We must presume that the jurors heeded these instructions, *see State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208 (1993) (presuming the jury " 'attend[s] closely[,] . . . strive[s] to understand, . . . and follow[s] the instructions given them' " (quoting *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985))), and it is evident that the jury was able to distinguish among the indictments and verdict sheets, as it convicted Defendant on only four of the five counts charged.

We note Defendant's assertion that "[a] denial of the right to a unanimous verdict of guilt occurs" where "there is evidence of more than one criminal offense which may be the basis for a particular verdict and, from the indictments, verdicts and jury instructions, there is no way to be certain that all twelve jurors found the state had proven beyond a reasonable doubt the elements of the same criminal offense for each guilty verdict." Defendant cites no authority in support of this proposition, and, indeed, this proposition is inconsistent with precedent set by our Supreme Court in *State v. Lawrence*, 360 N.C. 368, 375, 627 S.E.2d 609, 613 (2006) (holding that the "defendant was unanimously convicted of three counts of indecent liberties with a

minor, notwithstanding that the short-form indictments charging each crime [were] identical[,]" and, further, that "a defendant may be unanimously convicted of indecent liberties even if: (1) the jurors considered a higher number of incidents of immoral or indecent behavior than the number of counts charged, and (2) the indictments lacked specific details to identify the specific incidents"). Defendant's contention is meritless and is accordingly overruled.

For the foregoing reasons, we find no error.

NO ERROR.

Judges CALABRIA and ERVIN concur.