STATE OF NORTH CAROLINA v. THOMAS EDWARD ANDERSON

No. COA08-67

(Filed 16 December 2008)

1. **Criminal Law— consolidating charges for trial—child pornography—possessing and receiving computer files—secret peeping**

   The trial court did not abuse its discretion by consolidating for trial felony charges involving possessing and receiving computer files containing child pornography and a misdemeanor charge of secret peeping with a camera connected to defendant's computer. Although each charge alleges that defendant used the computer in a different manner, the use of the same tool to accomplish similar goals is sufficient to provide evidence of a common modus operandi. Further, the two types of offenses appear to have occurred during the same period of time.

2. **Sentencing— greater sentence for not pleading guilty—not supported by evidence**

   Defendant failed to show a reasonable inference that his sentence was based, even in part, on his insistence on a jury trial. Although defendant contended that certain statements by the judge implied that defendant would face jail if he did not plead

guilty, his sentence was within the statutory limit and the evidence did not support defendant's contention.

**3. Constitutional Law; Pornography— double jeopardy—possession and receipt of child pornography**

Possession and receipt are separate and distinct acts because receipt is a single, specific act while possession is a continuing offense, and this defendant's double jeopardy rights were not violated where the court proceeded on charges of second-degree exploitation of a minor for receiving computer files containing child pornography and third-degree exploitation of a minor for possessing those computer files.

**4. Evidence— information on computer—hard drive not available for examination**

The trial court did not err in a prosecution for exploiting minors through receiving and possessing computer files containing child pornography by admitting evidence retrieved from defendant's hard drive even though the State had negligently damaged the hard drive. Defendant did not put forth evidence that the State acted in bad faith, and exculpatory evidence on the hard drive was speculative at best.

**5. Evidence— chain of custody—sufficiency**

The State's chain of custody of certain exhibits was sufficient in a prosecution for exploiting minors by receiving and possessing computer files containing child pornography.

**6. Witnesses— expert qualification denied—no error**

The trial court did not err by denying defendant's motion to qualify a witness as an expert in computers where there was evidence that the witness had worked in several jobs using computers and had built several computers, but did not indicate any particular expertise with regard to hard drives or the erasure of files, the issue in this case.

**7. Pornography; Sexual Offenses— exploitation of minor—child pornography—secret peeping—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss charges of exploiting minors by receiving and possessing computer files containing child pornography and secret peeping by using a hidden camera he placed in his stepdaughter's room to observe her.

Appeal by defendant from judgment entered 17 May 2007 by Judge Jerry Braswell in Wayne County Superior Court. Heard in the Court of Appeals 21 May 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.*

*Richard E. Jester for defendant appellant.*

McCULLOUGH, Judge.

## FACTS

On 28 April 2005, Clare Anderson ("Clare") found a camera in an HVAC vent in her bedroom. After telling her mother, Deborah Anderson ("Ms. Anderson"), about the camera, the two examined the camera and found a cord leading from the camera in Clare's room to a computer located in the family's computer room. The computer belonged to Thomas Edward Anderson ("defendant"), Clare's stepfather. Clare and Ms. Anderson confronted defendant, and asked him if he was aware of the camera. Defendant admitted to placing the camera in the room, but argued that he had installed the camera to ensure that Clare did not get into trouble. Ms. Anderson requested defendant leave the house, and he did so a short time afterward.

Following the discovery of the camera, Ms. Anderson asked a neighbor, Cheryl Christman, to remove defendant's computer. Ms. Christman removed the computer from the Anderson's home, placed it first in her trunk, and then delivered it to the Office of Special Investigations (OSI) at the local Air Force Base on 2 May 2005. Although defendant was a member of the Air Force Reserve, the officials at OSI determined that the matter should be left to the Wayne County Sheriff's Office ("Sheriff's Office"). Accordingly, OSI turned the computer over to the Sheriff's Office. On 3 May 2005, Sergeant Tammy Odom of the Sheriff's Office interviewed Clare regarding the camera she found in her room. Defendant was later arrested for peeping at Clare.

A short time after defendant's arrest, Agent John Rea of the State Bureau of Investigations ("SBI") contacted Sergeant Odom and informed the sergeant that the SBI was investigating defendant. Defendant was being investigated because his computer had been detected sharing child pornography on the internet. On 8 June 2005, the Sheriff's Office released defendant's computer to Agent Rea to allow the SBI to further conduct their investigation. Agent Rea

alerted defendant of the property he had seized and requested defendant's consent to allow the SBI to examine the contents of the hard drive of the computer in question. Defendant consented to the SBI's examination.

On 10 June 2005, SBI Special Agent Eric Hicks conducted a forensic preview examination on defendant's computer. On one of the computer's hard drives ("defendant's hard drive"), Agent Hicks discovered approximately twenty-five movie files containing images of underage individuals engaged in sexual acts. Many of these files were given labels indicative of the explicit images they contained. Although the movie files were recovered from a single folder and had all been deleted, Agent Hicks determined that the files had previously been stored in a number of different folders on defendant's hard drive. Because the examination was only a preview, however, Agent Hicks did not attempt to determine if the files had ever been viewed.

On 15 June 2005, Agent Rea and Agent Kelly Moser interviewed defendant regarding the files he had been downloading online. Defendant stated that he had used file-sharing software to download movies, and that some of the files he had downloaded contained images of child pornography. Further, defendant stated that he had specifically searched for movie files containing these types of images. Eventually, defendant stated that he no longer wanted these files on his computer, so he performed a search and deleted those movie files located by the search. After this discussion, defendant began to discuss the camera his stepdaughter had found in her room. According to defendant, he put the camera in his stepdaughter's room to act as a video nanny, and did not have any inappropriate intentions.

On 28 November 2008, Agent Ricks attempted to perform a full forensic examination on defendant's hard drive. The examination was unsuccessful, however, as the hard drive did not work. The SBI then sent the hard drive to a private company for the purpose of recovering the data contained thereon. This too proved fruitless, and the SBI was unable to perform a full forensic examination or to determine in any more detail the contents of defendant's hard drive.

On 22 July 2005, defendant was convicted of misdemeanor secret peeping for his role in placing the camera in his stepdaughter's room. Defendant filed notice of appeal on that date. On 26 September 2006, defendant was indicted on ten felony counts of third-degree exploitation of a minor for the possession of the files containing child pornography. On 5 March 2007, under a superseding indictment, defendant

was charged with both the original ten counts of third-degree exploitation of a minor as well as an additional ten felony counts of second-degree exploitation of a minor for receiving the aforementioned files. Defendant's appeal of his misdemeanor charge was joined with his twenty felony charges pursuant to a motion by the State, and the two matters were heard before Judge Jerry Braswell in Wayne County Superior Court. On 17 May 2007, defendant was found guilty of all the charges against him. Defendant now appeals.

I.

[1] In his first argument on appeal, defendant argues the trial court erred by joining defendant's two types of offenses for trial. We disagree.

"Two or more offenses may be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (2007). "In considering a motion to join, the trial judge must first determine if the statutory requirement of a transactional connection is met." *State v. Williams*, 355 N.C. 501, 529-30, 565 S.E.2d 609, 626 (2002). In making this determination, the trial judge may consider various factors including the presence of a common *modus operandi* and the time lapse between the offenses. *Id.* at 529-30, 565 S.E.2d at 627. Should the trial judge determine the offenses have the requisite transactional connection, the court must then determine if the defendant "can receive a fair hearing on each charge if the charges are tried together." *State v. Huff*, 325 N.C. 1, 23, 381 S.E.2d 635, 647 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990). Our Supreme Court has held that

> [i]f consolidation hinders or deprives the accused of his ability to present his defense, the charges should not be consolidated. However, the trial judge's decision to consolidate for trial cases having a transactional connection is within the discretion of the trial court and, absent a showing of abuse of discretion, will not be disturbed on appeal.

*Huff*, 325 N.C. at 23, 381 S.E.2d at 647 (citations omitted).

After hearing the State's motion to join the two offenses for trial, the trial court found "that there appear[ed] to be a common thread in that both offenses, both the felony and the misdemeanor offenses, seem[ed] to involve sexual exploitation involving young females, that

a computer was used in both cases to view females." Accordingly, the trial court granted the State's motion. On appeal, defendant argues the trial court incorrectly determined that defendant's two offenses contained the requisite transactional connection for joinder.

Upon review, we are unpersuaded by defendant's contention. Defendant exhibited a similar *modus operandi* in both types of crimes charged. In each instance, defendant used the same personal computer for the purpose of viewing pictures of young women. Although we note that each charge alleges defendant used the computer in a different manner, we find the use of the same tool to accomplish similar goals is sufficient to provide some evidence of a common *modus operandi. See Williams*, 355 N.C. at 529-30, 565 S.E.2d at 627. Further, the two types of offenses appear to have occurred during the same period of time. According to testimony proffered by defendant, he did not delete many of the illicit images he downloaded until after his stepdaughter found the camera in her room. Therefore, defendant possessed the illicit images at the same time the camera was in place to record his stepdaughter. After reviewing these factors, as well as the additional circumstances surrounding the two types of offenses, we hold the trial court was presented with sufficient evidence to support a determination that the two types of offenses shared a transactional connection. As we can find no evidence that defendant was deprived of his ability to present his defense, we hold the trial court did not abuse its discretion in consolidating the offenses for trial.

## II.

[2] In his second argument on appeal, defendant argues the trial court issued his sentence in error. According to defendant, the trial court imposed a greater sentence upon defendant because he chose to proceed to trial rather than enter a guilty plea. We disagree.

"Although a sentence within the statutory limit will be presumed regular and valid, such a presumption is not conclusive." *State v. Gantt*, 161 N.C. App. 265, 271, 588 S.E.2d 893, 897 (2003), *disc. review improvidently allowed*, 358 N.C. 157, 593 S.E.2d 83 (2004). "If the record discloses that the court considered irrelevant and improper matter[s] in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of [the] defendant's rights." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). "A defendant has the right to plead not guilty, and 'he should not and cannot be punished for exercising that right.' " *Gantt,*

161 N.C. App. at 271, 588 S.E.2d at 897 (citation omitted). "Where it can be reasonably inferred the sentence imposed on a defendant was based, even in part, on the defendant's insistence on a jury trial, the defendant is entitled to a new sentencing hearing." *State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002).

In the case *sub judice*, the record indicates that a conference was held in the judge's chambers between defense counsel, the prosecutor, and the trial judge. When the trial resumed, the trial judge made a record entry regarding that conference. According to the trial judge, during the conference he indicated to the prosecutor and defense counsel that if the two sides were engaged in plea discussions, he would be "amenable to a probationary sentence." Defense counsel lodged an objection to the trial judge's comments during this conference, claiming that it could be inferred from such comments that the trial judge would be less likely to give defendant probation if he did not plead guilty. In response, the trial judge stated he had not meant to make any such implication, but rather to encourage the two sides to enter into plea negotiations.

On appeal, defendant again asserts that the judge's statements clearly implied that defendant would face jail time if he did not plead guilty to the charges against him. A review of the record does not support this contention. Here, defendant was given a sentence within the statutory limit for the corresponding crime. Thus, defendant must overcome the presumption of regularity. *See Gantt*, 161 N.C. App. at 271, 588 S.E.2d at 897. Although defendant argued at trial, and again argues on appeal, that the judge's comments clearly indicated that defendant would be sentenced more harshly if he did not plead guilty, the evidence in the record is insufficient to support such an assertion. Accordingly, we find that defendant has failed to show that it can be reasonably inferred that his sentence was based, even in part, on his insistence on a jury trial. Defendant's assignment of error is, therefore, without merit.

### III.

[3] In his third argument on appeal, defendant argues the trial court violated his right to be free from double jeopardy as guaranteed by the Constitutions of the United States and the State of North Carolina. Specifically, defendant argues the trial court erred in proceeding on Counts 11 through 20 for second-degree exploitation of a minor in defendant's indictment numbered 05CRS55290. According to defendant, these counts were identical to counts 1

through 10, respectively, for third-degree exploitation of a minor. We disagree.

It is well-established that when a defendant is indicted for a criminal offense he may be lawfully convicted of the offense charged therein or of any lesser offense if all the elements of the lesser offense are included within the offense charged in the indictment, and if all the elements of the lesser offense could be proved by proof of the facts alleged in the indictment. He may not, upon trial under that indictment, be lawfully convicted of any other criminal offense.

*State v. Davis*, 302 N.C. 370, 372, 275 S.E.2d 491, 493 (1981). Further, "[t]he constitutional prohibition against double jeopardy protects a defendant from 'additional punishment and successive prosecution' for the same criminal offense." *State v. Sparks*, 362 N.C. 181, 186, 657 S.E.2d 655, 658-59 (2008) (citations omitted).

Here, defendant was charged with ten counts of third-degree exploitation of a minor and ten counts of second-degree exploitation of a minor. The two charges were not identical, however. The counts of third-degree exploitation were based on defendant's possession of the illicit images of minors, while the counts of second-degree exploitation were based on defendant's receipt of these images. According to defendant, because possessing these images and receiving these images amounted to the same offense, punishing defendant for both possessing and receiving the same illicit images violated his right to be free from double jeopardy. We are unpersuaded by defendant's argument.

Our Supreme Court was previously asked to determine if possession and receipt amounted to the same act in *Davis*, where a defendant was charged with both receiving and possessing stolen property. According to the *Davis* Court, "[a]lthough at first glance possession may seem to be a component of receiving, it is really a separate and distinct act." *Davis*, 302 N.C. at 374, 275 S.E.2d at 494. The *Davis* Court went on to explain that "the unlawful receipt of stolen property is a single, specific act occurring at a specific time; possession, however, is a continuing offense beginning at the time of receipt and continuing until divestment." *Id.* On review of the instant case, we find the reasoning employed by our Supreme Court in *Davis* to be instructive. Accordingly, we hold that the acts of possession and receipt, with regard to these illicit images, amounted to separate and distinct acts. Therefore, the fact that defendant was charged and convicted of

both possessing and receiving the aforementioned images did not amount to double jeopardy. Defendant's assignment of error is without merit.

IV.

**[4]** In his fourth argument on appeal, defendant argues the trial court erred in admitting evidence retrieved from defendant's hard drive. According to defendant, this evidence should have been suppressed because the State negligently destroyed the hard drive, and the admission of the evidence shifted the burden of proof from the State to defendant. We disagree.

Our Supreme Court has "upheld the admission of evidence subsequently lost or destroyed where the exculpatory value of tests a defendant seeks to perform on that evidence is speculative and there is no showing of bad faith or willful intent on the part of any law enforcement officer." *State v. Hyatt*, 355 N.C. 642, 663, 566 S.E.2d 61, 75 (2002), *cert. denied*, 362 N.C. 90, 656 S.E.2d 594 (2007).

In the case *sub judice*, the State presented evidence of twenty child pornography movie files that were discovered on defendant's hard drive. However, because of damage that had occurred to the hard drive, the State was unable to determine if these files had ever been viewed or copied. The damage to the hard drive also prevented defendant from performing his own tests. While we recognize that the destruction of the hard drive may have precluded defendant from performing tests on the hard drive, the value of such evidence is speculative at best. The State presented evidence at trial that defendant purposefully downloaded and watched movie files containing child pornography. Although defendant argued that he accidentally retrieved these movies as the result of a search, he admitted that he would view a movie and, if it contained child pornography, he would delete it "[a]s soon as it was over."

On appeal, defendant fails to provide any authority for his claim that the State's introduction of this evidence amounted to a shifting of the burden of proof. Defendant's own testimony at trial indicated that even if the hard drive could be recovered, it would not show whether defendant had ever viewed the aforementioned movie files. Therefore, any exculpatory evidence that may have been on the hard drive is speculative at best. Further, defendant acknowledges that he did not put forward any evidence that the State acted in bad faith. Accordingly, we find defendant's arguments to be without merit.

V.

**[5]** In his fifth argument on appeal, defendant argues the trial court erred by admitting State's Exhibits 2A and 7 into evidence. According to defendant, the State failed to present a proper chain of custody for this evidence, and thus, this evidence should not have been admitted. We disagree.

Our Supreme Court has previously examined the chain of custody requirements in North Carolina. In *State v. Fleming*, 350 N.C. 109, 131, 512 S.E.2d 720, 736, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999), our Supreme Court held:

> Before real evidence may be received into evidence, the party offering the evidence must first satisfy a two-pronged test. "The item offered must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change." *State v. Campbell*, 311 N.C. 386, 388, 317 S.E.2d 391, 392 (1984). Determining the standard of certainty required to show that the item offered is the same as the item involved in the incident and that it is in an unchanged condition lies within the trial court's sound discretion. *Id.* at 388-89, 317 S.E.2d at 392. "A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered." *Id.* at 389, 317 S.E.2d at 392. Any weak links in the chain of custody pertain only to the weight to be given to the evidence and not to its admissibility. *Id.*

Here, defendant has failed to present any authority to support his claim that the State put forward an insufficient chain of custody. After reviewing defendant's claims, we hold the State presented a chain of custody sufficient to allow the State's exhibits to be admitted at trial. *See Campbell*, 311 N.C. at 388, 317 S.E.2d at 392. Defendant's assignment of error is overruled.

VI.

**[6]** In his sixth argument on appeal, defendant argues the trial court erred by denying defendant's motion that witness Claude Lee David, Jr., be qualified as an expert. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 702 (2007) provides that a witness must be qualified by "knowledge, skill, experience, training, or education" for his testimony to be admissible as expert testimony. *State*

*v. Davis*, 106 N.C. App. 596, 601, 418 S.E.2d 263, 267 (1992), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 710 (1993) ("Whether the witness qualifies as an expert is exclusively within the trial judge's discretion 'and is not to be reversed on appeal absent a complete lack of evidence to support his ruling.' "). *Id.* (citations omitted).

Here, defendant presented testimony from Mr. David, an airway transportation specialist for the Federal Aviation Administration. Mr. David testified at trial that he had worked as, *inter alia*, a computer field service technician, a precision measurement equipment laboratory specialist, and a yard manager. Mr. David further testified that he had built several computers, including one he recently built for his 11-year-old son. When defendant moved to have Mr. David qualified as an expert in computers, a bench conference was held and defendant's motion was denied.

On appeal, defendant argues the trial court erroneously rejected defendant's motion to qualify Mr. David as an expert witness. After reviewing the record, we hold the trial court was presented with sufficient evidence to support its ruling. Although Mr. David testified that he had worked in several jobs involving the use of computers, and that he had built several computers, the record does not indicate that Mr. David possessed any particular expertise with regard to hard drives or the erasure of files. Therefore, we hold the trial court did not abuse its discretion in denying defendant's motion. As such, defendant's assignment of error is without merit.

## VII.

[7] In his seventh argument on appeal, defendant argues the trial court erred in denying his motion to dismiss the charges due to the insufficiency of the evidence. We disagree.

When a defendant challenges the sufficiency of the evidence against him, the question before this Court is "whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990).

> Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." . . . If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be

allowed. This is true even though the suspicion so aroused by the evidence is strong.

*State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (citations omitted). In making a determination on the issue of sufficiency, this Court will consider the evidence in the light most favorable to the State. *Id.* at 67, 296 S.E.2d at 653.

Here, when viewed in the light most favorable to the State, the evidence presented at trial was sufficient to show (1) that defendant used his computer to knowingly download and view movies of minors engaged in sexual activity and (2) that defendant placed a hidden camera in his stepdaughter's room and used the camera to observe her. Thus, we find the State presented substantial evidence of each essential element of the crimes charged, and that defendant was the perpetrator of those crimes. *See Lynch*, 327 N.C. at 216, 393 S.E.2d at 814. Accordingly, the trial court did not err in failing to grant defendant's motion to dismiss.

No error.

Judges HUNTER and JACKSON concur.