NO. COA12-1128

NORTH CAROLINA COURT OF APPEALS

Filed:  21 January 2014

STATE OF NORTH CAROLINA

    v.

JASON RUSSELL WILLIAMS
Defendant

Robeson County
Nos. 03 CRS 13758-59
      03 CRS 13761-65
      03 CRS 13767-69
      03 CRS 13771-72
      03 CRS 13775
      03 CRS 13781
      03 CRS 13783
      03 CRS 13788-89
      03 CRS 13804
      03 CRS 13809-10
      03 CRS 13842-45
      03 CRS 13847
      06 CRS 12128-45
      06 CRS 12147-52
      06 CRS 12154-59
      06 CRS 12161-81
      06 CRS 57806

Appeal by defendant from judgments entered 9 May 2011 by Judge Claire V. Hill in Robeson County Superior Court.  Heard in the Court of Appeals 9 April 2013.

    *Roy Cooper, Attorney General, by Sherri Horner Lawrence, Assistant Attorney General, for the State.*

    *Staples Hughes, Appellate Defender, by David W. Andrews, Assistant Appellate Defender, for defendant-appellant.*

DAVIS, Judge.

Jason Russell Williams ("Defendant") appeals from his convictions for 102 counts of second-degree sexual exploitation of a minor and 25 counts of third-degree sexual exploitation of a minor. On appeal, Defendant asserts that the trial court (1) erroneously instructed the jury on two alternate theories of guilt where one theory was not supported by the evidence in 79 of the 102 counts of second-degree sexual exploitation of a minor; (2) incorrectly entered judgment on 25 counts of third-degree sexual exploitation of a minor despite a lack of intent by the General Assembly to punish criminal defendants for both receiving and possessing the same images; (3) violated his right to a public trial by closing the courtroom for a portion of the trial; (4) improperly admitted lay opinion testimony from law enforcement officers that images on a compact disc depicted minors engaged in sexual activity; and (5) improperly admitted testimony under Rule 404(b) that Defendant placed a webcam in a minor's bedroom, touched her inappropriately, and videotaped her. After careful review, we find no prejudicial error.

**Factual Background**

The State's evidence tended to establish the following facts: Defendant lived in Robeson County next door to Corey and Tabitha,[1]

---

[1] "Corey" and "Tabitha" are pseudonyms used to protect the identities of children who were minors at the time of the incidents giving rise to Defendant's convictions.

siblings who were 15 and 16 years old at the time of the underlying events. In April 2002, Corey told his school counselors that Defendant had given him a compact disc ("CD") containing pornographic images. Corey's stepfather viewed the images and determined that, in his opinion, the pictures included images depicting adults engaging in sexual activity and images depicting persons under the age of 18 who were "unclothed." During this same time period, Tabitha informed her stepfather that Defendant had installed a webcam in her bedroom when he came over to work on her computer.

Tabitha and Corey's stepfather called the Robeson County Sheriff's Office, and on 31 May 2002, Detective Howard Branch ("Detective Branch") of the Sheriff's Office came to their home to collect the CD and to inspect and photograph the webcam in Tabitha's bedroom. Detective Branch contacted Special Agent Charles Lee Newcomb ("Special Agent Newcomb") of the State Bureau of Investigation ("SBI") to assist him in opening the files on the CD. Detective Branch testified that after several attempts, Special Agent Newcomb was able to open and view the files, which contained images of both minors and adults engaging in sexual activity.

On 11 July 2002, law enforcement officers executed a warrant to search Defendant's home, and Special Agent Newcomb seized four computer towers from four desktop-style computers. Special Agent

Newcomb testified that while the officers were searching Defendant's residence, he spoke to Defendant, and Defendant admitted that there was both adult and child pornography on his computers. Special Agent Newcomb further related that Defendant had admitted attempting to install a webcam in Tabitha's room but had stated that he did not have a receiver for the webcam. During their conversation, Defendant also acknowledged that he gave Corey the CD containing the pornographic images.

Defendant was indicted and charged with 2 counts of disseminating obscene material to a minor under the age of 16, 114 counts of second-degree sexual exploitation of a minor, and 60 counts of third-degree sexual exploitation of a minor. Prior to trial, the State elected not to proceed on 9 counts of second-degree sexual exploitation of a minor and 35 counts of third-degree sexual exploitation of a minor. A jury trial was held during the May 2011 Criminal Session of Robeson County Superior Court.

At trial, SBI Special Agent Jonathan Lee Dilday ("Special Agent Dilday") testified regarding each image that formed the basis of a count of sexual exploitation of a minor. Each image was shown to the jury, and Special Agent Dilday testified as to when the file was created, the specific computer(s) on which the file was located, the file's name, and — for some of the images — when the file had last been accessed. Many of the images had file titles

that described the specific sexual act portrayed in the image in graphic and explicit terms and labeled the subjects as "underage," "preteens," or "kiddies." By order of the trial court, the courtroom was closed during Special Agent Dilday's testimony — the portion of the trial when the images were presented to the jury. The courtroom was open for every other portion of the trial.

Defendant testified at trial in his own defense. He stated that he repaired computers and removed computer viruses for a living and would often have 20 to 40 different clients at a time. He also testified that he was involved in multi-player computer gaming and would both invite people to his home to play videogames and go to other locations to play videogames and share files. Defendant further stated that he would let friends and other persons come to his home and use his high-speed Internet connection.

At the close of all the evidence, the trial court dismissed the two counts of disseminating obscene material to a minor and three of the counts of second-degree sexual exploitation. The jury returned guilty verdicts on all remaining charges. The trial court sentenced Defendant to five consecutive presumptive-range terms of 13 to 16 months imprisonment. The trial court then suspended three of the sentences and ordered Defendant to be placed on supervised probation for 36 months upon his release from incarceration. The trial court also ordered Defendant to register

as a sex offender for 30 years. Defendant gave notice of appeal in open court.

On 7 August 2013, this Court entered an order remanding this matter to the trial court to conduct a hearing and make findings of fact and conclusions of law regarding the temporary closure of the courtroom in accordance with *Waller v. Georgia*, 467 U.S. 39, 48, 81 L.Ed.2d 31, 39 (1984), as interpreted by this Court in *State v. Rollins*, ___ N.C. App. ___, ___, 729 S.E.2d 73, 77-79 (2012). Defendant's appeal was held in abeyance pending this Court's receipt of the trial court's order containing these new findings.

A hearing was held by the trial court on 9 September 2013. On 27 September 2013, the trial court entered an order containing findings of fact and conclusions of law as directed by this Court.

**Analysis**

**I. Jury Instructions**

Defendant first argues that the trial court erroneously instructed the jury on second-degree sexual exploitation of a minor. Pursuant to N.C. Gen. Stat. § 14-190.17, a person commits second-degree sexual exploitation of a minor when, knowing the nature or content of the material, he

> (1) Records, photographs, films, develops, or duplicates material that contains a visual representation of a minor engaged in sexual activity; or

> (2) Distributes, transports, exhibits, receives, sells, purchases, exchanges,

> or solicits material that contains a
> visual representation of a minor engaged
> in sexual activity.

N.C. Gen. Stat. § 190.17(a)(1)-(2) (2011).

Here, the trial court instructed the jury on two alternative theories of guilt: (1) exploitation of a minor by *duplicating* material that contained a visual representation of a minor engaged in sexual activity; and (2) exploitation of a minor by *receiving* material that contained a visual representation of a minor engaged in sexual activity. Defendant's specific argument on appeal is that the trial court committed reversible error in its instructions because the duplication theory of guilt was supported by the evidence in only some of the counts.

Defendant correctly notes that "[w]here the trial court instructs on alternative theories, one of which is not supported by the evidence, and it cannot be discerned from the record upon which theory the jury relied in arriving at its verdict, the error entitles the defendant to a new trial." *State v. O'Rourke*, 114 N.C. App. 435, 442, 442 S.E.2d 137, 140 (1994); *see State v. Pakulski*, 319 N.C. 562, 574, 356 S.E.2d 319, 326 (1987) ("resolv[ing] the ambiguity in favor of the defendant" and ordering new trial where one alternate theory of guilt was erroneous and one was properly submitted).

Defendant asserts that he is entitled to a new trial on 79 of the 102 counts of second-degree sexual exploitation of a minor.

He contends that the evidence presented at trial was sufficient to support the duplication theory for only the 23 images that were found in two or more locations on Defendant's computers. Because the remaining 79 images or videos were discovered in only one location, Defendant argues that the duplication theory of guilt was unsupported by the evidence offered by the State for the 79 counts predicated on those images.

At trial, Special Agent Dilday testified regarding the process that occurs when an image is downloaded from a file sharing website or other Internet source. He explained that "when you download something from the [I]nternet, you are making a copy of the file . . . from the location where it is stored on the [I]nternet down to the local machine that you are working on." When further questioned as to whether it was accurate to say that two copies of the downloaded material exist once a download is successfully completed, he replied affirmatively. The State contends that this evidence sufficiently supported an instruction on duplication for *all* counts of second-degree sexual exploitation because Defendant "duplicated the images when he downloaded them from the [I]nternet and placed them on his computer because [he] obtained a copy of the image and the original image remained in its original location."

Whether the act of downloading an image from the Internet constitutes a duplication for purposes of N.C. Gen. Stat. § 14-

190.17 appears to be an issue of first impression in North Carolina. The Arizona Court of Appeals, however, addressed this precise question in *State v. Windsor*, 224 Ariz. 103, 227 P.3d 864 (2010). Arizona's sexual exploitation statute is virtually identical to N.C. Gen. Stat. § 14-190.17 and prohibits "[r]ecording, filming, photographing, developing or duplicating" and "[d]istributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging" visual depictions of a minor engaging in sexual activity or exploitive exhibitions. A.R.S. § 13-3553(A)(1)-(2) (2009). While we recognize that "decisions from other jurisdictions are, of course, not binding on the courts of this State," we are free to review such decisions for guidance. *State v. Tucker*, ___ N.C. App. ___, ___, n.4, 743 S.E.2d 55, 61, n.4 (2013); *see Skinner v. Preferred Credit*, 172 N.C. App. 407, 413, 616 S.E.2d 676, 680 (2005) ("Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law."), *aff'd*, 361 N.C. 114, 638 S.E.2d 203 (2006).

In *Windsor*, the defendant argued that evidence of his actions in downloading child pornography from an Internet site was insufficient to support his convictions for sexual exploitation by duplicating visual depictions of minors engaged in sexual conduct. As in the present case, a witness for the State testified in

*Windsor* that "downloading involves using the Internet to copy a file from a remote computer." *Windsor*, 224 Ariz. at 104, 227 P.3d at 865.

In analyzing whether such evidence was sufficient to constitute duplication, the Arizona Court of Appeals looked to other courts' interpretations of the downloading process as well as the plain meanings of the words "download" and "duplicate." *Id.* at 105, 227 P.3d at 866. Noting that the dictionary definition of duplicate is "to make an exact copy of," the court concluded that "one who downloads an image from a remote computer or computer server has duplicated it for purposes of [the sexual exploitation statute]." *Id.* The *Windsor* court also rejected the defendant's argument that downloading an image was only consistent with "receipt or distribution of an existing image," reasoning that the defendant provided no explanation of "how creating an electronic copy of an image is so significantly different from making any other type of duplicate that it should be treated differently under the law." *Id.*

We believe that the Arizona Court of Appeals' analysis of this issue is well-reasoned and equally applicable here. In this case, the evidence presented at trial indicated that the images on Defendant's computers were obtained from the Internet using both a file sharing site and various Internet searches. Special Agent Dilday testified that when an image is downloaded from either a

file sharing website or another remote site, the original image remains in its original location and a separate copy is created and stored on the machine being used. As the *Windsor* court noted, the dictionary definition of duplicate is "to make a copy of." Merriam—Webster's Collegiate Dictionary 387 (11th ed. 2003).

It is well established that this Court's principal aim when interpreting statutes "is to effectuate the purpose of the legislature in enacting the statute," *State v. Goodson*, 178 N.C. App. 557, 558, 631 S.E.2d 842, 843 (2006) (citation and quotation marks omitted), and that "[s]tatutory interpretation properly begins with an examination of the plain words of the statute," *State v. Carr*, 145 N.C. App. 335, 343, 549 S.E.2d 897, 902 (2001) (citation and quotation marks omitted). Based on the evidence presented at trial and the plain meaning of the word "duplicate," we conclude the trial court's instruction on the duplication theory of guilt was proper.

## II. Legislative Intent

Defendant also contends that the trial court erred in entering judgment on the 25 counts of third-degree sexual exploitation of a minor because the General Assembly did not intend to punish criminal defendants for both receiving and possessing the same images. We first note — and Defendant acknowledges — that this Court has already determined that convictions for both second-degree sexual exploitation (based on *receiving* illicit images of

minors) and third-degree sexual exploitation (based on *possessing* those same images) do not violate the constitutional prohibition against double jeopardy. *See State v. Anderson*, 194 N.C. App. 292, 298-99, 669 S.E.2d 793, 797-98 (2008), *disc. review denied*, 363 N.C. 130, 675 S.E.2d 659 (2009). In *Anderson*, we determined that — as with receiving and possessing stolen goods — receiving illicit images and possessing those same images are "separate and distinct acts," and, as such, convictions for both do not amount to double jeopardy. *Id.* at 299-300, 669 S.E.2d at 798.

Defendant asserts that because *Anderson* only addressed the issue of double jeopardy, the question of whether the Legislature intended to punish criminal defendants for both receiving and possessing the same sexually explicit images "remains unanswered." By likewise analogizing to the receipt and possession of stolen goods, he contends that the General Assembly's intent in enacting the sexual exploitation statutes "was not to impose multiple punishments on defendants for receiving and possessing the same images, but instead to allow the State an option for prosecuting defendants for possessing the images despite not being able to prove where the images came from or who received them." We disagree.

In *State v. Howell*, 169 N.C. App. 58, 609 S.E.2d 417 (2005), we discussed the legislative intent behind our sexual exploitation statutes.

> Child pornography laws, such as N.C.G.S. § 14-190.17A(a) . . . are designed to prevent the victimization of individual children, and to protect minors from the physiological and psychological injuries resulting from sexual exploitation and abuse. This Court has noted that child pornography poses a particular threat to the child victim because the child's actions are reduced to a recording [and] the pornography may haunt him in future years, long after the original misdeed took place.

*Id.* at 63, 609 S.E.2d at 420-21 (internal citations and quotation marks omitted).

As such, we believe that the Legislature's criminalization of both receiving and possessing such images was not intended merely "to provide for the State a position to which to recede when it cannot establish the elements of" the greater offense, *State v. Perry*, 305 N.C. 225, 236, 287 S.E.2d 810, 816 (1982) (citation and quotation marks omitted), *overruled on other grounds by State v. Mumford*, 364 N.C. 394, 699 S.E.2d 911 (2010), but rather to prevent or limit two separate harms to the victims of child pornography. *See Anderson*, 194 N.C. App. at 299, 669 S.E.2d at 798 ("[T]he unlawful receipt . . . is a single, specific act occurring at a specific time; possession, however, is a continuing offense beginning at the time of receipt and continuing until divestment.") (citation and quotation marks omitted)); *Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 568-69, 351 S.E.2d 305, 320 (1986) ("A child who was posed for a camera must go through life knowing that the recording is circulating within the mass distribution

system for child pornography.") (citation omitted)), *aff'd*, 320 N.C. 485, 358 S.E.2d 383 (1987). We therefore overrule Defendant's argument.

**III. Closure of the Courtroom**

Defendant next argues that his constitutional right to a public trial was violated when the trial court closed the courtroom during the presentation of the images at issue. We disagree.

The United States Supreme Court has stated the following with respect to a criminal defendant's right to a public trial under the Sixth Amendment to the United States Constitution:

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury.

*Waller*, 467 U.S. at 46, 81 L.Ed.2d at 38 (citations and quotation marks omitted).

The presumption of an open and public trial, while substantial, is not absolute and can be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure

order was properly entered." *Id.* at 45, 81 L.Ed.2d at 38.

When deciding whether closure of the courtroom during a trial is appropriate, the trial court must: (1) determine whether the party seeking the closure has advanced "an overriding interest that is likely to be prejudiced" if the courtroom was not closed; (2) ensure that the closure is "no broader than necessary to protect that interest;" (3) "consider reasonable alternatives to closing the proceeding;" and (4) "make findings adequate to support the closure." *Id.* at 48, 81 L.Ed.2d at 39. We review the trial court's decision *de novo*. *See State v. Comeaux*, ___ N.C. App. ___, ___, 741 S.E.2d 346, 349 (2012) (applying *de novo* review to trial court's closure of courtroom), *disc. review denied*, ___ N.C. ___, 739 S.E.2d 853 (2013).

Here, the State made a pretrial motion to close the courtroom while the images at issue were shown to the jury "because of the nature of the images . . . [and] the nature of the testimony as to what may be depicted in the images." The trial court granted the State's motion, stating

> [t]he court will not be closed at any other time[,] and it will be open to anyone except for those witnesses that are on the — these witnesses that I have previously named that are on either the State or the defense witness list. But due to the nature of these charges, due to the nature of the photographs and that it is a criminal offense to disseminate these photographs and in a sense during this trial these photographs will be disseminated; so, the Court grants the motion to close the

courtroom only during the time period in which these photographs are being presented during the trial.

The trial court subsequently made the following pertinent supplemental findings in its 27 September 2013 order:

5. The Court finds that the State has presented an overriding interest that is likely to be prejudiced if the courtroom is not closed.

6. The Court finds that there is a problem with the proliferation of child pornography, which is the images of children, that being minors under the age of 18, engaged in sexual activity.

. . .

8. The Court recognizes that both the North Carolina Legislature and Congress have enacted specific statutes with regards to the proliferation and dissemination of child pornography, to include federal acts such as the Jacob Wetterling Act and the Adam Walsh Act, specifically to stem child pornography by preventing duplication and discovery in criminal cases, prohibiting copying and allowing the defendant to have access to these images in a secure setting.

9. This case dealt with still images and video images, with audio, of alleged child pornography, children under the age of 18 being involved in sexual activity.

. . .

11. In this trial, there were over 120 counts involving second and third degree sexual exploitation of a minor.

12. The Court finds that there is a compelling interest to stop the distribution and dissemination of child pornography. In this

case, it was disseminated to the jurors because they had to make the finding as the triers of fact, and it was up to the jury to make the determination of whether or not the defendant was guilty of second and third degree sexual exploitation of a minor.

13. The Court also recognizes the North Carolina Court of Appeals opinion *Cinema I*, 83 N.C. App. 544 (1986), and *Ferber v. New York*, that pornography is a greater threat to the victim than just the images themselves because the actions are reduced to recordings and photographs that can haunt them for years and be circulated for years.

14. The Court finds that the mere fact that the child in the video is not present in court does not obviate the State's interest to prevent continued dissemination.

15. As to the second prong of the Waller test, the Court finds that the closure of the courtroom was no broader than necessary.

16. The Court closed the courtroom during the testimony of Special Agent Dilday from the State Bureau of Investigation.

17. The Court notes that there was no media present and there were no requests by media for any access to the courtroom. Specifically, the Court recalls that there were two individuals in the courtroom at the time that the courtroom was closed and that there was a sequestration order in effect for both the State and the defense at the time.

18. The Court finds that the still images were numerous and that it would not have been judicially efficient and economical to require the State to copy all still images, one set of photographs for each of the 13 jurors and to have to view those individually. It was more judicially efficient and economical to present those images through the ELMO [projector] on the television monitor;

that based on the logistics of this courtroom, the electrical outlets, that the position of the television at the time, the monitor with the ELMO on the prosecutor's table, and the computer on the prosecutor's table, that this was a reasonable placement of the monitor for all the jurors to see and that the TV was in the most centrally located position for all the jurors to be able to see and/or hear.

19. The closure did not occur until the State was ready to present these images and videos to the jury, and the Court reopened the courtroom as soon as the testimony with regards to these images and videos concluded. That the courtroom was closed for a few hours, and it was not closed at any other time during the trial of this matter. Further, the courtroom was closed temporarily for the limited purpose of publishing the still photographs through the ELMO and the videos with sound, with the sexually descriptive titles to the jury through the testimony of Special Agent Dilday. The Court does find that the defense, Mr. Davis, requested his investigator to remain in the courtroom, and the court allowed that request. Further, the Court finds that defendant's attorney, Mr. Davis, was allowed to relocate so that he would be able to view the images as they were being presented to the jury.

20. As to the third prong of the *Waller* test, the Court finds that, based on the logistics of the courtroom, that there were no other reasonable alternatives to closing the courtroom.

21. The Court finds that the State did have the television monitor on a cart, utilized it along with the ELMO and a laptop computer at the prosecutor's table. All of those had to be in close proximity to each other, not just because of the cord into the electrical outlet, but also the cords linking them up together so that these images could be presented to the jury so that they could make

their necessary findings with regard to the nature of the images and videos to determine the guilt or innocence of the defendant.

22. The Court also notes that the videos had audio, which even though the statute specifically does not discuss as it relates to detailed images being disseminated, the Court finds that the audio is a part of the video in the dissemination of the child pornography, and that if the spectators had been allowed to remain, they would have also heard the audio, which is a direct part of the video.

23. The Court does find that there were over 100 images presented to the jury, and that the position of the television was the best position for all jurors to have the best ability to see and/or hear the evidence as it was being presented.

24. The Court also notes that some of the videos were smaller in size and did not take up the whole screen of the television, so if the television had been positioned further away, as proposed by the defense, it would have been harder for jurors in seats 1 and 8 to have seen that video.

25. The Court notes that the State has limited resources and sometimes doesn't always have the necessary equipment within which to comply with other alternatives.

26. The Court finds that the location of the television was the most reasonable and logical to present the images and the videos to the jury.

27. The Court finds that all of the elements, pursuant to *Waller v. Georgia* have been met to support closure of the courtroom during the presentation of the still images and videos depicting child pornography, that being children under the age of 18 engaged in sexual activity.

Based on its findings of fact, the trial court made the following conclusions of law:

> 1. The State advanced an overriding interest that is likely to be prejudiced if the courtroom is not closed;
>
> 2. The closure in this case was no broader than necessary to protect the State's interest;
>
> 3. The Court considered and found there were no other reasonable alternatives to closing the courtroom; and
>
> 4. The closure of the courtroom during the publication of the still images and videos with audio complied with the test set forth in *Waller v. Georgia*.

Defendant challenges findings 18 and 21-26 of the trial court's supplemental findings of fact. He first argues that findings 21 and 25 — which address the logistics of the audiovisual equipment and the State's limited resources — are not supported by competent evidence because they were based solely upon the prosecutor's arguments at the 9 September 2013 hearing.

As explained above, we remanded this matter to the trial court so that it could evaluate the propriety of the temporary closure by applying the four-part *Waller* test and making the requisite findings. In so doing, the trial court essentially reheard on 9 September 2013 the State's pretrial motion to close the courtroom. During the 9 September 2013 hearing, both the prosecution and defense counsel made arguments on their respective positions as to

whether the temporary closure was proper.

While Defendant is correct that arguments of counsel are generally not considered substantive evidence, *see State v. Tuck*, 191 N.C. App. 768, 775, 664 S.E.2d 27, 31 (2008) (holding that prosecutor's statements were not evidence and could not support restitution order), this Court has held that in certain pretrial motions, "evidence at the hearing may consist of oral statements by the attorneys in open court in support and in opposition to the motion . . . ." *State v. Chaplin*, 122 N.C. App. 659, 663, 471 S.E.2d 653, 656 (1996); *see State v. Pippin*, 72 N.C. App. 387, 397-98, 324 S.E.2d 900, 907 (upholding trial court's findings regarding defendant's speedy trial claim that were based on counsel's statements), *disc. review denied*, 313 N.C. 609, 330 S.E.3d 615 (1985).

In *Pippin*, we noted that the Official Commentary to N.C. Gen. Stat. § 15A-952, a statute addressing pretrial motions, specifically provides that "'pretrial motions . . . can be disposed of on affidavit or representations of counsel.'" 72 N.C. App. at 397, 324 S.E.2d at 907. We believe the same is true here given that the State's motion to temporarily close the courtroom was a pretrial motion. Thus, even though the 9 September 2013 hearing took place well after the trial ended, it was simply a rehearing of the original motion, and — for this reason — we believe that N.C. Gen. Stat. § 15A-952 is applicable. As such, the trial court

did not err in basing its findings that (1) the audiovisual equipment all needed to be in close proximity; and (2) the State had finite resources to comply with potential alternatives to a limited closure, on the prosecutor's arguments.

Defendant next contends that findings 23, 24, and 26 were not supported by the evidence because the testimony of Defendant's trial counsel at the 9 September 2013 hearing contradicted these findings. During the hearing, Defendant's appellate counsel argued that if the television monitor was oriented in a different direction, the courtroom could remain open. Defense counsel reasoned that if the monitor was angled differently, spectators could be present yet unable to actually view the images while still allowing an unobstructed view of the images by the jury. At the 9 September 2013 hearing, Defendant's trial counsel testified that he could see the monitor in the alternate location from each of the jurors' seats. Defendant thus asserts that the trial court's findings that the original position of the television was the most "reasonable and logical" for the jurors' viewing was unsupported by the evidence. We are not persuaded.

This Court has recently explained that in an order addressing the propriety of the temporary closure of the courtroom, "[t]he trial court's own observations can serve as the basis of a finding of fact as to facts which are readily ascertainable by the trial court's observations of its own courtroom." *State v. Rollins*, ___

N.C. App. ___, ___, ___, S.E.2d. ___, ___ (filed Dec. 17, 2013). Thus, the trial judge herself was in a position to determine the relative merits of alternative locations for the television monitor. As such, we cannot conclude that these findings were erroneous simply because the testimony of Defendant's trial counsel could have supported a different conclusion. *See id.* at ___, ___ S.E.2d at ___ ("Although it is possible that other findings of fact could have been made or that other conclusions could have been drawn weighing the factors more in defendant's favor[, that] does not mean that the trial court erred.").

Defendant also contends that finding 22 does not support the temporary closure of the courtroom because the audio portions of the videos at issue are not part of the "visual representation of a minor engaged in sexual activity." Defendant thus argues that the State was not required to play the audio and, even if it did, "the audio portions would not have exposed the spectators to child pornography." However, because N.C. Gen. Stat. § 14-190.13 — which provides definitions for terms used in the statutes addressing sexual exploitation — specifically includes "video recordings" in its description of "material," N.C. Gen. Stat. § 14-190.13(2) (2011), we do not believe that the trial court erred in considering the harm of disseminating the audio portions of the videos.

Finally, Defendant asserts that finding 18 and conclusion of law 3 were erroneous because the trial court misapplied the third

prong of *Waller*, which requires the trial court to "consider reasonable alternatives to closing the proceeding[.]" *Waller*, 467 U.S. at 48, 81 L.Ed.2d at 39. Although the trial court ultimately rejected Defendant's proposed alternatives to temporary closure as unreasonable because they were not judicially efficient, economical, or the most appropriate for the jury's viewing ability, the trial court's supplemental findings do indicate that it *considered* these options. *Waller* does not require more.

We therefore conclude that the trial court's detailed supplemental findings of fact sufficiently demonstrate that "the State advanced an overriding interest that was likely to be prejudiced; that the closure of the courtroom was no broader than necessary to protect the overriding interest; that the trial court considered reasonable alternatives to closing the courtroom; and that the trial court made findings adequate to support the closure." *Comeaux*, ___ N.C. App. at ___, 741 S.E.2d at 351. Therefore, Defendant's right to a public trial was not violated.

**IV. Lay Opinion Testimony of Officers**

Defendant's fourth argument on appeal is that the trial court erred in allowing Detective Branch and Special Agent Newcomb to testify that some of the images found on the CD that Defendant gave to Corey included minors engaged in sexual activity. Defendant contends that this testimony was improper because it expressed an opinion as to Defendant's guilt and thereby invaded

the province of the jury.

"[W]hether a lay witness may testify as to an opinion is reviewed for abuse of discretion." *State v. Norman*, 213 N.C. App. 114, 119, 711 S.E.2d 849, 854 (citation and quotation marks omitted), *disc. review denied*, 365 N.C. 360, 718 S.E.2d 401 (2011). An abuse of discretion occurs when the trial judge's decision "lacked any basis in reason or was so arbitrary that it could not have been the result of a reasoned decision." *Williams v. Bell*, 167 N.C. App. 674, 678, 606 S.E.2d 436, 439 (citation and quotation marks omitted), *disc. review denied*, 359 N.C. 414, 613 S.E.2d 26 (2005).

Under Rule 701 of the North Carolina Rules of Evidence, a lay witness may testify in the form of opinions or inferences "which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. R. Evid. 701. It is well established that lay witnesses may testify as to "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time. Such statements are usually referred to as shorthand statements of fact." *State v. Alexander*, 337 N.C. 182, 191, 446 S.E.2d 83, 88 (1994) (citation and quotation marks omitted).

In *State v. Ligon*, 206 N.C. App. 458, 464, 697 S.E.2d 481, 486 (2010), this Court addressed the admissibility of statements by lay witnesses that photographs of a minor child were "'disturbing,' 'graphic,' 'of a sexual nature involving children,' 'objectionable,' [and] 'concerning' to the witness." In *Ligon*, defendant did not object to this testimony at trial, and the Court, being "directed to no case finding prejudicial error in admitting testimony regarding the contents of a still photograph where the testimony was not objected to at trial," determined that the lay witnesses' "reactions to the photographs [did] not rise to the level of plain error." *Id.* We did note, however, that "[a]lthough their opinions as to what the pictures showed were based on their perceptions of the photographs, the helpfulness of those opinions to the jury, which was in no worse position to evaluate the pictures, is questionable." *Id.* at 462-63, 697 S.E.2d at 485 (emphasis omitted).

Here, unlike in *Ligon*, Defendant made timely objections to Special Agent Newcomb's and Detective Branch's testimony that some of the images were of minors engaged in sexual activity. However, even when objected to at trial, evidentiary errors are subject to harmless error analysis on appeal. Thus,

> [t]he burden is on the party who asserts that
> evidence was improperly admitted to show both
> error and that he was prejudiced by its
> admission. The admission of evidence which is
> technically inadmissible will be treated as

> harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded.

*State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (internal citations omitted); *see also* N.C. Gen. Stat. § 15A-1443 (2011) (prejudice occurs "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached . . . The burden of showing such prejudice . . . is upon the defendant"). Furthermore, "[w]here there exists overwhelming evidence of defendant's guilt[,] defendant cannot make . . . a showing [of prejudicial error] . . . ." *State v. Gayton*, 185 N.C. App. 122, 125, 648 S.E.2d 275, 278 (2007) (citation and quotation marks omitted).

During Defendant's trial, Special Agent Newcomb and Detective Branch testified that some of the images found on the CD depicted individuals under the age of 18 engaging in sexual activity. However, neither specified which *particular* images, in their opinion, included minors engaging in sexual activity. After this testimony, the jurors viewed each of the images for themselves with regard to every count of second- and third-degree sexual exploitation of a minor and were instructed to determine whether the image forming the basis of the count "contained a visual representation of a minor engaged in sexual activity." Given the jury's opportunity to observe each image and make an individualized determination of the nature of the image coupled with the fact

that the image files frequently had titles noting the subject's status as a minor and the sexual act depicted, Defendant cannot establish that he was prejudiced by the admission of Special Agent Newcomb's and Detective Branch's testimony. Accordingly, even assuming, without deciding, that the admission of this testimony was an abuse of discretion, it was not reversible error.

**V. Evidence of Prior Bad Acts**

Defendant's final argument is that the trial court erred in admitting evidence that Defendant (1) set up a webcam in Tabitha's room; (2) videotaped her dancing in her pajamas; and (3) inappropriately touched Tabitha while they were riding four-wheelers. Defendant only made objections regarding the form of the State's questions during this testimony and thus seeks review of this issue under the plain error doctrine.

Rule 404(b) of the North Carolina Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. . . .

N.C. R. Evid. 404(b).

It is well established that Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by

a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense . . . ." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis in original). The State contends that the evidence was properly admitted to show Defendant's intent "to obtain electronic images of minors of a sexual nature" and to show "the absence of mistake or accident that the pornographic images were found on Defendant's hard drive."

"In determining whether the prior acts are offered for a proper purpose, the ultimate test of admissibility is whether the [prior acts] are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of . . . Rule 403." *State v. Martin*, 191 N.C. App. 462, 467, 665 S.E.2d 471, 474 (2008) (citation and quotation marks omitted), *disc. review denied*, ___ N.C. ___, 676 S.E.2d 49 (2009). Defendant relies on *State v. Doisey*, 138 N.C. App. 620, 532 S.E.2d 240, *disc. review denied*, 352 N.C. 678, 545 S.E.2d 434 (2000), *cert. denied*, 531 U.S. 1177, 148 L.Ed.2d 1015 (2001); *State v. Hinson*, 102 N.C. App. 29, 401 S.E.2d 371, *appeal dismissed and disc. review denied*, 329 N.C. 273, 407 S.E.2d 846 (1991); and *State v. Maxwell*, 96 N.C. App. 19, 384 S.E.2d 553 (1989), *disc. review denied*, 326 N.C. 53, 389 S.E.2d 83 (1990), to support his contention that the testimony regarding these prior acts was inadmissible. We believe that

Defendant's reliance on these cases is misplaced.

In *Doisey*, this Court held that the trial court erred in admitting evidence that the defendant placed a camcorder in the bathroom in his prosecution for first-degree statutory sex offense. 138 N.C. App. at 626, 532 S.E.2d at 244-45. We determined that this evidence described "conduct dissimilar to the conduct with which Defendant was charged," and thus "did not tend to show Defendant's plan or scheme to sexually assault [the victim]." *Id.* We also held, however, that the improperly admitted evidence did not rise to the level of plain error because the defendant could not show that in light of all the other evidence admitted, the testimony at issue had a probable impact on the jury's determination of guilt. *Id.* at 627, 532 S.E.2d at 245.

In *Hinson*, we determined that evidence of the defendant's possession of sexual paraphernalia and books about sexual intercourse was improperly admitted in his prosecution for first-degree sex offense and indecent liberties with a minor. 102 N.C. App. at 36, 401 S.E.2d at 375-76. Ultimately, we concluded that although the evidence did not indicate proof of intent, preparation, or a plan or scheme, its admission did not constitute plain error in light of the overwhelming evidence of the defendant's guilt. *Id.* at 37, 401 S.E.2d at 376.

Finally, in *Maxwell*, this Court held that evidence that the defendant often appeared nude in front of his children and fondled

himself in the presence of his daughter did not show his plan or scheme to sexually abuse his daughter and did "little more than impermissibly inject character evidence . . . of whether [the] defendant acted in conformity with these character traits at the times in question." 96 N.C. App. at 24-25, 384 S.E.2d at 557. We determined that the erroneous admission of such evidence, combined with the improper exclusion of the victim's prior sexual abuse allegations directed at her uncle, prejudiced the defendant's right to a fair trial.

Unlike *Doisey*, *Hinson*, and *Maxwell*, however, Defendant in the present case was charged with second-degree and third-degree sexual exploitation of a minor — offenses which implicate "visual representation[s] of a minor engaged in sexual activity." N.C. Gen. Stat. § 14-190.17; 14-190.17A. We believe that installing a webcam in Tabitha's bedroom and videotaping her dancing in pajama shorts and a tank top are acts similar in nature to Defendant's present charges of possessing and receiving or duplicating visual representations of minors engaged in sexual activity and serve to demonstrate Defendant's intent to obtain sexual images of minors. *See State v. Brown*, 211 N.C. App. 427, 433-34, 710 S.E.2d 265, 270 (2011) (determining that evidence of defendant's possession of incestuous pornography was admissible under Rule 404(b) to show intent to commit sex offense against his daughter because "evidence of a defendant's incestuous pornography collection sheds light on

that defendant's desire to engage in an incestuous relationship, and that desire serves as evidence of that defendant's motive to commit the underlying act — engaging in sexual intercourse with [his] child — constituting the offense charged"), *aff'd per curiam*, 365 N.C. 465, 722 S.E.2d 508 (2012).

We also note that both the offenses for which Defendant was charged and the prior acts of videotaping and attempting to capture images of Tabitha by means of a webcam involved the use of electronics to obtain sexual images of minors. This further demonstrates the admissibility of the testimony regarding these prior acts pursuant to Rule 404(b).

Furthermore, these prior acts are also evidence of the absence of mistake or accident. Defendant denied any improper conduct during his testimony at trial, claiming that he attended large-scale file sharing events where users could share and access other users' files and that during these file sharing events "information [could] be passed to [his] hard drive" without his knowledge. Defendant also stated that when he copied customers' hard drives for his computer repair business, he did not know what sort of information was on their drives. This testimony suggested that Defendant was not aware of the images that were found on his computers. Indeed, Defendant specifically stated that he had never viewed child pornography on his computer and did not know it was there. The evidence that Defendant had previously attempted to

obtain sexual images of Tabitha, a minor, was therefore relevant to suggest that the images of minors engaged in sexual activity found on Defendant's computers were not transferred or placed there by accident or mistake.

Thus, we conclude the trial court properly determined that the testimony regarding (1) Defendant's installation of a webcam in Tabitha's room; and (2) his act of videotaping her dancing in pajamas was admissible because it was introduced for purposes other than merely to demonstrate Defendant's propensity to commit a crime.[2]

Conversely, Tabitha's testimony that Defendant touched her breasts and under her pants while they were driving a four-wheeler does not possess the same indicia of similarity to the charged offenses. Because Defendant did not object to this evidence at trial, however, he bears the burden of showing that its admission constituted plain error – meaning that the error was such that it

---

[2] Defendant further contends that, even if it was admissible under Rule 404(b), the evidence regarding his videotaping of Tabitha nevertheless should have been excluded under Rule 403 as its probative value was substantially outweighed by the danger of unfair prejudice. However, as we explained in *State v. Cunningham*, 188 N.C. App. 832, 837, 656 S.E.2d 697, 700 (2008) (quoting *State v. Steen*, 352 N.C. 227, 256, 536 S.E.2d 1, 18 (2000), *cert. denied*, 531 U.S. 1167, 148 L.Ed.2d 997 (2001)), "[t]he balancing test of Rule 403 is reviewed by this [C]ourt for abuse of discretion, and we do not apply plain error 'to issues which fall within the realm of the trial court's discretion.'" *Accord State v. Jones*, 176 N.C. App. 678, 687, 627 S.E.2d 265, 271 (2006) (refusing, based on *Steen*, to review "defendant's Rule 403 argument" for plain error).

"had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

We conclude that in light of the overwhelming evidence of Defendant's guilt — specifically, the voluminous testimony concerning the images found on his computers and the explicit file names of those images, which typically described the age of the subjects and the sexual nature of the content — Defendant cannot establish plain error. *See State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002) (holding that inadmissible testimony did not rise to level of plain error because "[t]he overwhelming evidence against defendant leads us to conclude that the error committed did not cause the jury to reach a different verdict than it otherwise would have reached").

## Conclusion

For the reasons stated above, we conclude that Defendant received a fair trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges McGEE and STEPHENS concur.