STATE OF NORTH CAROLINA v. RICHARD COLT ROLLINS

No. COA11-1437

(Filed 17 July 2012)

**1. Constitutional Law—right to public trial—courtroom temporarily closed—insufficient findings of fact**
    The trial court violated defendant's Sixth Amendment right to a public trial in a non-felonious breaking or entering, first-degree kidnapping, second-degree rape, and resisting a public officer case when the trial judge temporarily closed the courtroom while the victim testified. The trial court failed to make sufficient findings of fact in accordance with *Waller v. Georgia*, 467 U.S. 39, to allow the Court of Appeals to review the propriety of the trial court's decision to close the proceedings. The case was remanded for a hearing on the propriety of the closure.

**2. Sentencing—prior record level—out-of-state conviction— not sufficiently similar—prejudicial**
    The trial court erred in a non-felonious breaking or entering, first-degree kidnapping, second-degree rape, and resisting a public officer case by determining that defendant was a prior record level VI for sentencing purposes. Defendant's Florida conviction

for burglary was not sufficiently similar to the corresponding offense in this state and the error was not harmless since defendant would have been considered a lower level offender.

Appeal by defendant from judgments entered 28 September 2010 by Judge C. Philip Ginn in Henderson County Superior Court. Heard in the Court of Appeals 25 April 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for the State.*

*Paul F. Herzog for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Richard Colt Rollins appeals from judgments entered 28 September 2010 after a jury found him guilty of non-felonious breaking or entering, first degree kidnapping, second degree rape, and resisting a public officer. Defendant argues that his Sixth Amendment right to a public trial was violated when the trial court temporarily closed the courtroom during the victim's testimony and that the trial court erred in determining that a prior out-of-state conviction was sufficiently similar to the corresponding North Carolina offense when determining defendant's prior felony record level. After careful review, we reverse and remand.

## Background

The State's evidence tended to establish the following facts: M.S. and defendant met in June 2007 at a Seventh Day Adventist "camp meeting." Defendant had recently been released from prison. The two began dating and engaging in a sexual relationship. In November 2007, the relationship began to deteriorate. M.S. told defendant that she no longer wanted to have a sexual relationship outside of marriage and that she wanted defendant to do more to reintegrate himself into the community. M.S. and defendant continued to see each other, but defendant began having angry outbursts, after which he would become remorseful and apologize to M.S. On one occasion, defendant threatened to kill M.S., and on another occasion, M.S. feared that defendant would rape her during one of his angry outbursts.

On 3 July 2008, M.S. arrived at her home and found defendant working on a drainage ditch in her yard. She forcefully told defendant to leave and not return to her home. On the evening of 4 July 2008, M.S. went on a long walk, and, when she returned to her home, she

saw defendant's car parked in her yard. M.S. went into the house without encountering defendant in the yard; however, a short while later, defendant called to her from the back of her house. M.S. asked defendant to leave, and he became agitated. M.S. tried to leave the house, but defendant prevented her from doing so. An argument ensued, during which time M.S.'s friend, Tom Sitler, called. Mr. Sitler could tell that M.S. was upset, and he asked her if defendant was there and whether she wanted him to call the police. M.S. responded yes to both inquiries. Mr. Sitler called a mutual friend, Paulette Love, who in turn called the police.

M.S. testified that before the police arrived, defendant ordered her to undress, ripped her shirt, pulled her into the back bedroom, and raped her. When the police arrived, they heard a woman crying and saying " 'don't hurt me.' " The officers knocked on the glass storm door, and defendant approached the door wearing his boxers. Defendant then closed the exterior door and engaged the deadbolt. The deputies knocked down the two doors and took defendant into custody. Defendant claimed that the sexual encounter that took place on 4 July 2008 was consensual and that he bolted the door when he saw the officers because neither he nor M.S. had called the police.

Defendant was charged with burglary, first degree kidnapping, second degree rape, and resisting a public officer. On 28 September 2008, defendant was convicted of non-felonious breaking or entering, first degree kidnapping, second degree rape, and resisting a public officer. The trial court arrested judgment on the first degree kidnapping conviction and entered judgment on second degree kidnapping, sentencing defendant to 48-67 months imprisonment. The charges of second degree rape, non-felonious breaking or entering, and resisting an officer were consolidated and defendant was sentenced to 156-197 months imprisonment. Defendant gave oral notice of appeal.

## Discussion

### I.

[1] Defendant argues that the trial court violated his Sixth Amendment right to a public trial when the trial judge temporarily closed the courtroom while M.S. testified concerning the alleged rape perpetrated by defendant without engaging in the four-part test set forth in *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d 31 (1984). We agree.

Prior to M.S.'s testimony, the prosecutor requested that the courtroom be closed, citing N.C. Gen. Stat. § 15-166 (2011), which provides:

STATE v. ROLLINS

[221 N.C. App. 572 (2012)]

In the trial of cases for rape or sex offense or attempt to commit rape or attempt to commit a sex offense, the trial judge may, during the taking of the testimony of the prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case.

The prosecutor stated the following rationale for closure:

Because of the delicacy of the issues regarding rape, force, everything else which is in regards to rape and sex offenses, that's why this type of classification of offenses are included with a specific statute such as this. . . . I would urge the [c]ourt to close the courtroom during [M.S.'s] testimony as it presents an extreme emotional hardship on her to have to testify period. Even in front of the Defendant it presents a very difficult—difficulty for her. Obviously, she knows she has to do it and [the] confrontation clause certainly wouldn't allow for the Defendant not to be present, but for other spectators, other participants in the trial, it's simply not necessary that they be in the courtroom during her testimony.

The prosecution asked that one of M.S.'s supporters be allowed to remain in the courtroom, but the trial court stated that if defendant was not permitted to have a supporter remain in the courtroom, then neither was M.S. The prosecution then moved to remove all spectators, including M.S.'s supporters. The following exchange occurred between the trial court and defense counsel:

[Defense counsel]: Well, we object. Court should be open. We've heard testimony already from officers who have talked to her, we've heard testimony from her friends who've talked to her. Nothing—we haven't heard anything that's strange or need to be really embarrassing. But I have no case law.

[Trial court]: I don't know that there is any case law, because it's basically—as I understand it . . . a discretionary call . . . . I don't know that . . . a [c]ourt would abuse it's [sic] discretion in either way by ruling either way in this regard.

The trial court subsequently agreed "to exclude all unnecessary parties from the courtroom during the testimony of the alleged victim . . . ."

As a preliminary matter, the State claims that defendant has not preserved his constitutional argument for appeal. We disagree. Defendant objected based on his contention that "[c]ourt should be open." We hold that it was apparent from the context that defendant

was objecting to the prosecution's attempt to close the trial in violation of defendant's constitutional right to a public trial. *See* N.C.R. App. P. 10(a)(1) (2012) (stating that an objection is preserved so long as the specific ground for the objection is "apparent from the context"). Defendant's argument is, therefore, preserved for appellate review.

We now turn to whether the trial court erred in closing the courtroom during M.S.'s testimony. This Court reviews alleged constitutional violations *de novo*. *State v. Tate*, 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007). Pursuant to the Sixth Amendment of the United States Constitution, a criminal defendant is entitled to a "public trial." U.S. Const. amend. VI. "[T]he guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 270, 92 L. Ed. 682, 692 (1948).

> "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . ."

*Id.* at 270 n.25, 92 L. Ed. at 693 n.25 (quoting 1 [sic] Cooley, Constitutional Limitations 647 (8th ed. 1927)). "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46, 81 L. Ed. 2d at 38.

"The violation of the constitutional right to a public trial is a structural error, not subject to harmless error analysis." *Bell v. Jarvis*, 236 F.3d 149, 165 (4th Cir. 2000); *see Waller*, 467 U.S. at 49 n.9, 81 L. Ed. 2d at 40 n.9. However, "the right to an open trial may give way in certain cases to other rights or interests, such as the defend-ant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, 467 U.S. at 45, 81 L. Ed. 2d at 38; *see also Bell v. Evatt*, 72 F.3d 421, 433 (4th Cir. 1995) ("Although there is a strong presumption in favor of openness, the right to an open trial is not absolute. The trial judge may impose reasonable limitations on access to a trial in the interest of the fair administration of justice."). "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Waller*, 467 U.S. at 45, 81 L. Ed. 2d at 38.

Consequently, while N.C. Gen. Stat. § 15-166 permits the trial court to close the courtroom during a rape victim's testimony, the

trial court must balance the interests of the prosecutor with the defendant's constitutional right to a public trial. *Waller*, 467 U.S. at 45, 81 L. Ed. 2d at 38. The Supreme Court in *Waller* set forth the following four-part test that the trial court must engage in while balancing these competing interests: (1) "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced," (2) "the closure must be no broader than necessary to protect that interest," (3) "the trial court must consider reasonable alternatives to closing the proceeding," and (4) "it must make findings adequate to support the closure." *Id.* at 48, 81 L. Ed. 2d at 39.

This Court has recognized the applicability of the *Waller* test when allowing a courtroom closure pursuant to N.C. Gen. Stat. § 15-166. *See, e.g., State v. Smith,* 180 N.C. App. 86, 98, 636 S.E.2d 267, 275 (2006); *State v. Starner,* 152 N.C. App. 150, 154, 566 S.E.2d 814, 816-17, *cert. denied,* 356 N.C. 311, 571 S.E.2d 209 (2002); *State v. Jenkins,* 115 N.C. App. 520, 525, 445 S.E.2d 622, 625, *disc. review denied,* 337 N.C. 804, 449 S.E.2d 752 (1994).

In the present case, defendant claims that the trial court failed to make findings adequate to support the closure—the fourth prong of the *Waller* test. It is undisputed that the trial court made no findings regarding his decision to close the courtroom during M.S.'s testimony, and it appears from his statement to defense counsel that he was not aware of the need to engage in the *Waller* four-part test.

The only North Carolina state court decision on point with regard to findings of fact is *Jenkins*, 115 N.C. App. at 525-26, 445 S.E.2d at 625, where this Court held that the failure to make findings of fact in accordance with the fourth prong of the *Waller* test is error. Prior to addressing the defendant's argument that he was denied his right to a public trial, the Court in *Jenkins* remanded the case for a new trial on another basis; therefore, the Court merely instructed the trial court to follow the mandates of *Waller* if it decided to close the proceedings during the new trial. *Id.* at 526, 445 S.E.2d at 625. The *Jenkins* Court did not provide the trial court with guidance on how detailed the findings of fact must be. Arguably, the holding in *Jenkins* that the failure to make findings is error constitutes dicta since it was not essential to the outcome in that case. *State v. Sanchez,* 175 N.C. App. 214, 218, 623 S.E.2d 780, 782 (2005). Before reaching our decision in the present case, we will examine the holdings in other jurisdictions.

In conducting a survey of how various courts have ruled on the sufficiency of findings of fact, it is apparent that there is no bright-

line rule. Many courts have, like the *Jenkins* Court, held that the failure to make findings is error. *See, e.g., Carter v. State*, 738 A.2d 871, 878 (Md. 1999) ("Even if there were a sufficient basis in this case to close the courtroom, ordinarily, the trial judge must have stated the reason or reasons for doing so on the record. Only in that way will the public be able to be aware of the reasons for closure, and an appellate court able to review the adequacy of those reasons."); *Minnesota v. McRae*, 494 N.W.2d 252, 259 (Minn. 1992) ("The record does not disclose evidence or findings of a showing that closure was necessary to protect the witness or ensure fairness in the trial. On the record before us we cannot say that there has been compliance with the requirements set out in *Waller*[.]").

However, some courts have held that the failure to make findings of fact is not reversible error so long as the reviewing court can glean or infer from the record whether the closure was proper. *See, e.g., Woods v. Kuhlmann*, 977 F.2d 74, 77-78 (2nd Cir. 1992) ("In light of the information gleaned both from the conference held in chambers with the judge, prosecutor and defense counsel, and from the short exchange between the judge and [the witness], we conclude that the record is sufficient to support the partial, temporary closure of petitioner's trial."); *United States v. Osborne*, 68 F.3d 94, 99 (5th Cir. 1995) (admonishing the trial court for failing to make detailed findings of fact, but holding that the reason behind the closure could be "infer[red]" from the record); *United States v. Farmer*, 32 F.3d 369, 371 (8th Cir. 1994) ("In this circuit, specific findings by the district court are not necessary if we can glean sufficient support for a partial temporary closure from the record.").

Additionally, some courts have required the trial court to enter detailed findings of fact to justify closure. *See, e.g., McIntosh v. United States*, 933 A.2d 370, 379-80 (D.C. Cir. 2007) ("In this case, the court's general reference to the child's vulnerability is not sufficient to meet the fourth *Waller* requirement, nor does it show that the trial court adequately considered other important interests before ordering the courtroom closed."); *State v. Klem*, 438 N.W.2d 798, 802 (N.D. 1989) ("*Waller* requires that a hearing be conducted and that findings be made before a trial is closed to the public.").

The Fourth Circuit has also examined this matter and we find its logic to be persuasive. In *Bell*, 236 F.3d at 155, the trial court conducted a hearing on the prosecution's motion to close the courtroom during the minor victim's testimony. The trial court decided to temporarily close the trial, finding that the child's testimony regarding

repeated sexual abuse by a relative was "of an apparent delicate nature." *Id.* at 171. In determining that this finding was sufficient, the court stated:

> In a case involving long-standing sexual abuse of a minor by a family member, when the trial judge has obviously made a particularized determination that closure is appropriate and has articulated the *basic rationale* for closing the courtroom, additional "findings" would be little more tha[n] a statement of the obvious.

*Id.* at 172 (emphasis added). The court further held that appellate review is not limited to examining the findings; rather, the findings may be "viewed in conjunction with the known circumstances of the case and the record developed[.]" *Id.* at 174. We do not interpret *Bell* to mean that in *every* case the trial court need only state the "basic rationale." The trial judge must "evaluate, on a case-by-case basis, the propriety of a temporary closure." *Id.* at 171. We do interpret *Bell* to mean that there must be adequate findings, coupled with the record evidence, such that a reviewing court can examine the trial court's ruling. As the court noted, "the better course" is for the trial court to make "detailed findings." *Id.* at 174.

Based on our review of the applicable caselaw, we adhere to *Jenkins* and hold that the absence of findings entirely is error. We further hold, based on the logic of the court in *Bell*, that while the trial court need not make exhaustive findings of fact, it must make findings sufficient for this Court to review the propriety of the trial court's decision to close the proceedings. *See also Fayerweather v. Moran*, 749 F.Supp. 43, 46 (D.R.I. 1990) ("All that [the trial judge] was required to do was to articulate those findings in terms specific enough to permit a reviewing court to determine the basis for the order."). We caution trial courts to avoid making "broad and general" findings that impede appellate review. *Waller*, 467 U.S. at 48, 81 L. Ed. 2d at 40.

Having determined that the trial court erred by not entering the *Waller* findings, we must now decide how to remedy this error.[1] In *Waller*, the Supreme Court held that "the remedy should be appropriate to the violation." *Id.* at 50, 81 L. Ed. 2d at 41. There, a suppression hearing was closed to the public, not the trial. *Id.* The Court determined that a new trial would be a "windfall for the defendant" and elected to remand to the trial court for a new suppression hearing in which "significant portions" of the hearing would be open to the pub-

---

1. We need not address the other three prongs of the *Waller* test.

lic. *Id.* Since *Waller*, there has been a split of authority concerning the remedy in cases such as this where the trial court failed to make findings sufficient to support the closure. In *McRae*, 494 N.W.2d at 260, the court interpreted *Waller* and stated: "If a remand for a hearing on whether there was a specific basis for closure might remedy the violation of closing the trial without an adequate showing of the need for closure, then the initial remedy is a remand, not a retrial."

Given the limited closure in the present case and the fact that the trial court did not utilize the *Waller* four-part test, we hold that the proper remedy is to remand this case for a hearing on the propriety of the closure. The trial court must engage in the four-part *Waller* test and make the appropriate findings of fact regarding the necessity of closure during M.S.'s testimony in an order. If the trial court determines that the trial should not have been closed during M.S.'s testimony, then defendant is entitled to a new trial. If the trial court determines that the trial was properly closed during M.S.'s testimony on remand, then defendant may seek review of the trial court's order by means of an appeal from the judgments that the trial court will enter on remand following the resentencing hearing as set out in the next section of this opinion.

II.

**[2]** Next, defendant argues that the trial court erred in determining that he was a prior record level VI for sentencing purposes because defendant's Florida conviction for burglary is not sufficiently similar to the corresponding offense in this state. We agree.

"The trial court's assignment of a prior record level is a conclusion of law which we review *de novo.*" *State v. Goodwin*, 190 N.C. App. 570, 576, 661 S.E.2d 46, 50 (2008). Pursuant to N.C. Gen. Stat. § 15A–1340.14(e) (2011):

> If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

A defendant may stipulate that he or she "has been convicted of a particular out-of-state offense and that this offense is either a felony or a misdemeanor under the law of that jurisdiction." *State v. Bohler*,

198 N.C. App. 631, 638, 681 S.E.2d 801, 806 (2009), *disc. review denied*, ____ N.C. ____, 691 S.E.2d 414 (2010). However,

> the question of whether a conviction under an out-of-state statute is substantially similar to an offense under North Carolina statutes is a question of law to be resolved by the trial court, and stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate.

*State v. Moore*, 188 N.C. App. 416, 426, 656 S.E.2d 287, 293 (2008) (citation and quotation marks omitted).

Here, contrary to defendant's contention, the trial court did not rely on defendant's stipulation; rather, the trial court explicitly found that the out-of-state convictions were "sufficiently similar in nature to those that would have been of the same nature here in North Carolina . . . ." Still, defendant argues that the crimes are not, in fact, sufficiently similar.

In North Carolina, burglary is defined as "the breaking and entering of the dwelling house or sleeping apartment of another in the nighttime with intent to commit a felony therein, whether such intent be executed or not." *State v. Bumgarner*, 147 N.C. App. 409, 413, 556 S.E.2d 324, 328 (2001); N.C. Gen. Stat. § 14-51 (2011). Florida defines burglary in pertinent part as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter[.]" Fla. Stat. § 810.02(b)(1) (2011). The Florida statute is broader than the North Carolina statute in that it encompasses more than a dwelling house or sleeping apartment. Significantly, the Florida statute does not require that the offense occur in the nighttime or that there be a breaking as well as an entry. Based on these differences, we hold that the Florida burglary statute is not sufficiently similar to North Carolina's burglary statute; therefore, the trial court erred in assigning four points to the Florida conviction when determining defendant's prior record level.

We find that the Florida statute is sufficiently similar to N.C. Gen. Stat. § 14-54 (2011), felonious breaking or entering, a Class H felony, because it encompasses any building and does not have to occur in the nighttime. *See generally State v. Haymond*, 203 N.C. App. 151, 168, 691 S.E.2d 108, 122 (noting the elements of felonious breaking or entering pursuant to N.C. Gen. Stat. § 14-54(a) as: "(1) the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein." (internal quotation marks and citation omitted)),

*disc. review denied,* 364 N.C. 600, 704 S.E.2d 275 (2010). Had the trial court correctly determined that defendant's Florida conviction was sufficiently similar to North Carolina's breaking or entering statute, defendant would have received a total of 17 prior record points, instead of 19 points, which would have made him a Level V offender instead of a Level VI offender for sentencing purposes. Therefore, not only did the trial court err in finding the Florida statute sufficiently similar to North Carolina's burglary statute, but this error was not harmless since defendant would be considered a lower level offender. *See State v. Lindsay,* 185 N.C. App. 314, 315-16, 647 S.E.2d 473, 474 (2007) (noting that this Court applies a harmless error analysis to prior level record points whereby the amount of deducted points must affect the defendant's record level to require a remand for a new sentencing hearing). Therefore, we reverse and remand for a new sentencing hearing.

### Conclusion

Because the trial court failed to utilize the *Waller* four-part test, we remand this case for a hearing on the propriety of the closure. Additionally, we reverse and remand for a new sentencing hearing.

Remanded in part; Reversed and Remanded in part.

Judges STROUD and ERVIN concur.