IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-72

Filed 19 March 2025

Union County, Nos. 18 CRS 54283, 54344-45

STATE OF NORTH CAROLINA

      v.

DEREK JVON MILLER, Defendant.

Appeal by Defendant from judgment entered 5 June 2023 by Judge Jonathan W. Perry in Union County Superior Court. Heard in the Court of Appeals 15 May 2024.

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Katy Dickinson-Schultz, for defendant-appellant.*

*Attorney General Jeff Jackson, by Special Deputy Attorney General Kimberley A. D'Arruda, for the State.*

STADING, Judge.

Derek Jvon Miller ("Defendant") appeals from a final judgment entered against him pursuant to jury verdicts finding him guilty of attempted first degree murder, going armed to the terror of the people, and possession of a handgun by a minor. After careful consideration, we affirm the trial court's order.

## I.  Background

On 19 August 2018, Neqayvius McClendon ("McClendon"), Nyhiem Kendall

("Kendall"), and O.S.[1] (collectively, "the group") walked to a local basketball court together. On their way to the basketball court, the group was accosted by D.G., E.G., K.H., and Defendant, who were riding together in a car. D.G. was driving the car, and all of the occupants were in possession of guns. D.G. pulled up next to where the group was walking, and the car's occupants "flash[ed]" their guns at the group. As D.G. began driving away, testimony revealed that Defendant fired his gun at the group—striking McClendon in his back.

On 8 July 2019, Defendant was indicted for attempted first degree murder, possession of a handgun by a minor, discharging a firearm in city limits, and going armed to the terror of the people. Before Defendant's trial, on 24 November 2021, the State moved for closure of "the courtroom . . . to the public" while McClendon and Kendall testified, arguing that it was justified under *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210 (1984) and N.C. Gen. Stat. § 15A-1034 (2023) ("Controlling access to the courtroom."). The State argued that closing the courtroom was warranted because of "concerns for the safety of the witnesses." The State reasoned that closure was justified since Defendant previously attempted to intimidate the witnesses via social media. Defendant objected, arguing that closing the courtroom would amount to a Sixth Amendment violation, or in the alternative, that it was unnecessary given that other "reasonable alternatives" were available.

---

[1] The record is unclear whether certain individuals involved are juveniles. We therefore use pseudonyms to protect their anonymity as a precautionary measure.

The parties then conferred in "the back hallway" with the trial court to "briefly talk about a possible solution to closing the court[room] . . . ." Upon returning, the trial court recounted the conversation on the record:

> THE COURT: Madam Court Reporter, for the record, we stepped to the back. And the inquiry was about what the Court was inclined to do for the State's motion to close the courtroom.
>
> What I indicated to both parties is what I was thinking, as they could pick up, was my — my resolution at this point, unless circumstances change, is for direct relatives of Mr. Miller to stay in the courtroom during those two witnesses. Anybody not directly related to him will be outside the courtroom. And deputies, after my admonition for no cell phone use, will keep an eye on anybody in the courtroom and their use of cell phones. And that will be true for any State witnesses as well, Mr. Collins, or speculators. So anybody who's not a direct relative of Mr. Miller or Mr. Purser, they will be asked to step outside during those two witnesses' examinations.

In this context, the trial court defined "direct relatives" as "blood" relatives, including Defendant's "mother, brother, sister, [and] father." Thereafter, Defendant's case proceeded to trial and a jury found Defendant guilty of all charges. Following entry of judgment, Defendant gave notice of appeal in open court.

In *State v. Miller*, 287 N.C. App. 660, 662, 884 S.E.2d 175, 177 (2023) (hereinafter "*Miller I*"), Defendant argued that the trial court's order, closing the courtroom, violated his constitutional right to a public trial for failure to "engag[e] in the four-part test set forth in *Waller* . . . ." He also asserted "that the charge of discharging a weapon within . . . city limits should have been dismissed because

- 3 -

neither the arrest warrant nor the indictment contained the caption of the ordinance and the State failed to prove the ordinance at trial." *Id.* at 665, 884 S.E.2d at 179. A prior panel from our Court held that "the trial court failed to utilize the *Waller* four-part test and make adequate findings of fact in an order to support closing the courtroom to the public," and thus remanded the case "for a hearing on the propriety of the closure." *Id.* at 666, 884 S.E.2d at 180. The Court held,"[i]f the trial court determines that the closure was not justified, then Defendant is entitled to a new trial." *Id.* However, "[i]f the trial court determines that the closure was justified, then Defendant may seek review of the trial court's order by means of an appeal from the judgment that the trial court will enter on remand following resentencing." *Id.* The Court also held that "the trial court erred by denying Defendant's motion to dismiss the charge of discharging a weapon within city limits" and therefore, "vacate[d] Defendant's conviction . . . and remand[ed] for resentencing." *Id.*

On remand, the trial court entered an order decreeing that closure of the courtroom during the testimony of McClendon and Kendall was warranted under *Waller*. The trial court concluded: "the State has an **overriding interest** in having its witnesses and victims in cases testify, and [to] be safe while doing so–which is likely prejudiced if there is intimidation, or unauthorized recording of court proceedings occurring"; its decision was "**no broader than necessary** to protect the interest of the State having its witnesses and victims testify"; and it "**considered reasonable alternatives to closure**, including allowing relatives of Defendant to

remain in the courtroom, which it did." The trial court also made "its own observations of the situation, including noting the relatively young age of the witnesses/victims as well as the violent nature of the offenses at issue." The following exhibits were reviewed in reaching this decision:

(1) State Exhibits [#]1-4 are individual pictures of the Defendant on a social media page holding large sums of money in stacks of currency (bills), flashing gang signs, and holding a firearm – a pistol – pointed while appearing to aim towards something off screen[.]

(2) State Exhibit [#]5 are several photos . . . with the Defendant flashing gang signs, and the caption underneath the pictures of "Let him keep on talking he's a dead man . . . ."

(3) State Exhibit #6 is another picture of the Defendant . . . with the same caption of "Let him keep talking he's a dead man . . . ."

(4) State Exhibit #7 is a pair of pictures, one of which is the Defendant with a mask, flashing a gang sign, with stacks of cash in his hand and all around him while sitting on a staircase, along with a different picture of three individuals (not including the Defendant) – one with hands over his ears, one with his hands over his eyes, and one making a shushing gesture, indicating to the Court something along the lines of hear nothing, say nothing, see nothing[.]

(5) State Exhibit #8 is a pair of pictures with the Defendant flashing gang signs, with a caption reading "I'ma Pull Up In Style, We Gon Do A Drive By In The Wraith" and displaying a countdown clock with the caption "Trial Date" and showing hours, minutes, and seconds[.]

(6) State Exhibit #9 is a set of lyrics partially referenced in State Exhibit #8 that reference additional lyrics from the same song, including "I'll shoot him right up in his face"

and references to carrying guns and "beat[ing] the case" as referenced in Exhibit #8 as well.

The day after entry of the trial court's order on remand, the State filed a dismissal of Defendant's charge for discharging a firearm in city limits. The trial court resentenced Defendant, and he entered his notice of appeal in open court.

## II.    Jurisdiction

This court has jurisdiction to consider Defendant's appeal under N.C. Gen. Stat. §§ 7A-27(b)(1) (2023) ("From any final judgment of a superior court . . . .") and 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered.").

## III.    Analysis

Defendant asks us to consider whether, on remand, the trial court's order closing the courtroom during the testimony of McClendon and Kendall was entered in error. Defendant maintains that: (1) the State failed to advance an overriding interest that would be prejudiced if the courtroom was kept open; (2) the trial court's findings of fact concerning the State's overriding interest were not supported by competent evidence; (3) the trial court's findings of fact concerning the State's overriding interest do not support its conclusion of law; and (4) the trial court's order was broader than necessary because it failed to consider other reasonable alternatives.

## A. Standard of Review

"It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *State v. Rollins*, 231 N.C. App. 451, 453, 752 S.E.2d 230, 233 (2013) (citation omitted) (hereinafter, "*Rollins II*"). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding." *State v. Ashworth*, 248 N.C. App. 649, 651, 790 S.E.2d 173, 176 (2016) (citation omitted). The trial court's findings of fact "have the force and effect of a jury verdict and are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*." *Rollins II*, 231 N.C. App. at 454, 752 S.E.2d at 233 (citation omitted). Our previous decisions reflect that an alleged violation of the constitutional right to a public trial is reviewed under a *de novo* standard. *See State v. Spence*, 237 N.C. App. 367, 372, 764 S.E.2d 670, 675 (2014); *see also Miller I*, 287 N.C. App. at 662, 884 S.E.2d at 177. "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (internal quotation marks and citations omitted). "The violation of the constitutional right to a public trial is a structural error, not subject to harmless error analysis." *State v. Rollins*, 221 N.C. App. 572, 576, 729 S.E.2d 73, 77 (2012) (hereinafter, "*Rollins I*").

## B. Right to a Public Trial

"The Sixth Amendment of the United States Constitution and Article I, Section 18, of the North Carolina Constitution guarantee a criminal defendant the right to a public trial." *Miller I*, 287 N.C. App. at 662, 884 S.E.2d at 177. "[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public. The central aim of a criminal proceeding must be to try the accused fairly . . . ." *Waller*, 467 U.S. at 46, 104 S. Ct. at 2215 (citation omitted). The right to a public trial "has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. 257, 270, 68 S. Ct. 499, 506 (1948).

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . .

*Rollins I*, 221 N.C. App. at 576, 729 S.E.2d at 77 (citations and internal quotation marks omitted).

"Although there is a strong presumption in favor of openness, the right to an open trial is not absolute." *State v. Comeaux*, 224 N.C. App. 595, 599, 741 S.E.2d 346,

349 (2012) (citations and quotation marks omitted). "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Rollins I*, 221 N.C. App. at 576, 729 S.E.2d at 77 (citations and internal quotation marks omitted). In accordance with these principles, a trial court "may impose reasonable limitations on access to the courtroom when necessary to ensure the orderliness of courtroom proceedings or the safety of persons present." N.C. Gen. Stat. § 15A-1034(a). "Additionally, the trial court may order that all persons in the courtroom 'be searched for weapons or devices that could be used to disrupt or impede the proceedings[,]' but such order 'must be entered on the record.'" *Miller I*, 287 N.C. App. at 662, 884 S.E.2d at 177 (quoting N.C. Gen. Stat. § 15A-1034(b)). Circumstances meriting closure of the courtroom, "will be rare, however, and the balance of interests must be struck with special care." *Rollins I*, 221 N.C. App. at 576, 729 S.E.2d at 77 (citations and internal quotation marks omitted).

Pursuant to *Waller*, the closure of a public trial in whole or in part must satisfy the following four-part test: (1) "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced", (2) "the closure must be no broader than necessary to protect that interest", (3) "the trial court must consider reasonable alternatives to closing the proceeding, and" (4) "it must make findings adequate to support the closure." 467 U.S. at 48, 104 S. Ct. at 2216; *accord State v. Jenkins*, 115 N.C. App. 520, 525, 445 S.E.2d 622, 625 (1994).

### *1. Overriding Interest; Competent Evidence*

Defendant first contends that the trial court committed error because "the State failed to advance an overriding interest that would be prejudiced if the courtroom was kept open." Defendant maintains, as to the overriding interest element of *Waller*, that "[t]he findings were not supported by competent evidence, nor were they sufficient to justify the closure." We disagree.

"[W]hen review[ing] a trial court's decision to remove certain spectators from the courtroom, . . . [the] transcript is an imperfect tool for conceptualizing the events of a trial." *State v. Register*, 206 N.C. App. 629, 635, 698 S.E.2d 464, 469 (2010) (citation and internal quotations omitted). This Court "must leave much . . . to the judgment and good sense of the judge who presides over [the trial]." *Id.* (citations and internal quotation marks omitted). To that end, "[t]he trial court's own observations can serve as the basis of a finding of fact as to facts which are readily ascertainable by the trial court's observations of its own courtroom." *Spence*, 237 N.C. App. at 372, 764 S.E.2d at 675 (2014) (citation omitted). In addition, "[f]indings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *State v. Salter*, 264 N.C. App. 724, 732, 826 S.E.2d 803, 809 (2019) (citation omitted). "[W]hile the trial court need not make exhaustive findings of fact, it must make findings sufficient for this Court to review the propriety of the trial court's decision to close the proceedings." *Rollins I*, 221 N.C. App. at 579, 729 S.E.2d at 79 (citation omitted).

On remand, the trial court's findings of fact were made pursuant to a battery of competent evidence including: (1) nine exhibits from the State; (2) photographs from Defendant's social media demonstrating intimidation; (3) the "violent nature" of the charges; (4) "the relatively young age of the witnesses [and] victims"; (5) "concerns" of the testifying witnesses and their parents; (6) the prior intimidating conduct of Defendant at his bond hearing; and (7) the prior intimidating conduct of members of the gallery during Kendall's testimony. Based on these findings, the trial court concluded that "the State had an overriding interest in having its witnesses and victims in cases testify, and be safe while doing so–which is likely prejudiced if there is intimidation, or unauthorized recording of court proceedings occurring."

The exhibits introduced by the State, included in the trial court's findings of fact, demonstrated that Defendant had previously made threats to potential witnesses on three occasions:

> State Exhibit [#]5 are several photos . . . with the Defendant flashing gang signs, and the caption underneath . . . "Let him keep on talking he's a dead man . . . ."
>
> State Exhibit #6 is another picture of the Defendant with his hands in a clawing pose, with the same caption of "Let him keep on talking he's a dead man . . . ."
>
> State Exhibit #7 is a pair of pictures, one of which is the Defendant with a mask, flashing a gang sign, with stacks of cash in his hands and all around him while sitting on a staircase, along with a different picture of three individuals (not including the Defendant) – one with his hands over his ears, one with hands over his eyes, and one making a shushing gesture, indicating the Court something along

- 11 -

the lines of hear nothing, say nothing, see nothing[.]

> State Exhibit #8 is a pair of pictures with the Defendant flashing gang signs, with a caption reading "I'ma Pull Up In Style, We Gon Do A Drive By In The Wraith" and displaying a countdown clock with the caption "Trial Date" and showing hours, minutes, and seconds[.]

The trial court found that "[a]s a whole, these social media materials with multiple images of guns and allusions to violence are potentially intimidating, and certainly would seem concerning to a potential victim and . . . witness taking the stand." When viewing these exhibits in conjunction with the other findings made by the trial court, there is competent evidence on the record to warrant the conclusion that there were genuine safety concerns for the testifying witnesses. Contrary to Defendant's assertion, this evidence is competent because "a reasonable mind might accept" these photos and other evidence "as adequate to support the finding." *Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176 (citation omitted).

For example, the trial court found that:

> [D]uring a prior hearing, someone present in the audience had taken a video of the witness . . . Kendall on the stand and put in on a social media website subsequently. This according to the State had led the witnesses and their parents to express concerns about their personal safety and testifying in the trial.

A reasonable mind might accept this as being adequate to support the finding because being filmed while testifying will likely prejudice the testimony that a witness is willing to give out of fear for their safety; especially when coupled together with the

intimidating nature of the social media posts previously described. *See Comeaux*, 224 N.C. App. at 601, 741 S.E.2d at 350 (finding an overriding interest on behalf of the State where the defendant's wife "engaged in behavior designed to intimidate the minor victim" while the minor victim was giving testimony). When discussing this previous incident, counsel for the State noted that Kendall "was concerned about" being filmed and it "bothered him." Further, at the pretrial hearing, counsel for the State provided that when speaking with the witnesses and their family members, they expressed concerns for their safety while testifying:

> In speaking to our witnesses last week, in discussing this matter coming up this week for trial, there was concern by them as well . . . by the family, the dad did most of the talking, Mr. Chris Kendall, about the safety and well-being of his family if any of them, specifically the boys, testify in this matter. And I know the Court is an open forum. It's supposed to be open. But, Judge, we would ask that you would close it based on that, based on the concerns that they have, concerns that I have based on what they say about their safety. . . . [T]here is concern that might happen again as far as somebody posting something, recording something, them being intimidated as far as coming forward and being able to testify openly and truthfully in this matter.

Shortly after, counsel for the State added:

> We would state that we have in that the interests of our witnesses being safe outside of the courtroom as well as being . . . able to go forward with this case without there being any type of intimidation of them while they are possibly on the stand is the prejudice that we are trying to overcome or want to overcome.
> . . . .
> But, again, the main thing, Judge, is for their safety. They

> are concerned about their safety as far as testifying in this matter, like I said.

Contrary to Defendant's urging, the State adequately advanced the overriding interest of witness safety, and that interest was likely to be prejudiced by the intimidation tactics of Defendant and members of the gallery filming. Accordingly, the trial court adhered to the first and fourth *Waller* elements in reaching its decision on remand. 467 U.S. at 48, 104 S. Ct. at 2216. Moreover, the competent findings in the trial court's order adequately support its conclusion—that the State had an overriding interest in having its witnesses and victims testify, which is likely prejudiced if there is intimidation or unauthorized recording of court proceedings occurring. *Rollins II*, 231 N.C. App. at 453, 752 S.E.2d at 233.

Defendant further contends that the trial court's findings were not supported by competent evidence because neither of the witnesses themselves testified to being fearful; rather, these assertions were made by the prosecutor. Defendant cites non-binding case law to advance his proposition. *See State v. Turrietta,* 2013-NMSC-036, 308 P.3d 964 (2013); *see also Longus v. State*, 416 Md. 433, 7 A.3d 64 (2010); *see also Woods v. Kuhlmann*, 977 F.2d 74 (2d Cir. 1992); *see also Guzman v. Scully*, 80 F.3d 772 (2d Cir. 1996); *see also United States v. Simmons*, 797 F.3d 409 (6th Cir. 2015). In his brief, Defendant contends that "concerns for safety have to be specific and be based on something more than a prosecutor's perfunctory statement . . . ." We disagree.

Upon review of our case law, "in certain pretrial motions, 'evidence at the hearing may consist of oral statements by the attorneys in open court in support and in opposition to the motion . . . .'" *State v. Williams*, 232 N.C. App. 152, 165, 754 S.E.2d 418, 427 (2014) (citation omitted) (ellipses in original), *disc. rev. denied and appeal dismissed*, 367 N.C. 784, 766 S.E.2d 846 (2014). In *Williams*, 232 N.C. App. at 160, 754 S.E.2d at 424, our Court was faced with the same task of determining whether the trial court made the requisite findings to support its decision to close the courtroom under *Waller*. The defendant similarly contended that the findings of fact were not supported by competent evidence "because they were based solely upon the prosecutor's arguments at the . . . hearing." *Id.* at 165, 754 S.E.2d at 426. In response, the Court determined that a pretrial motion to close a courtroom "can be disposed of on affidavit or [by] representations of counsel." *Id.* at 165, 754 S.E.2d at 427 (citations omitted); N.C. Gen. Stat. § 15A-952 (2023). The Court reasoned as follows:

> In *Pippin*, we noted that the Official Commentary to N.C. Gen. Stat. § 15A-952, a statute addressing pretrial motions, specifically provides that "'pretrial motions . . . can be disposed of on affidavit or representations of counsel.'" 72 N.C. App. at 397, 324 S.E.2d at 907. We believe the same is true here given that the State's motion to temporarily close the courtroom was a pretrial motion. Thus, even though the . . . hearing took place well after the trial ended, it was simply a rehearing of the original motion, and—for this reason—we believe that N.C. Gen. Stat. § 15A-952 is applicable. As such, the trial court did not err in basing its findings . . . on the prosecutor's arguments.

*Williams*, 232 N.C. App. at 165–66, 754 S.E.2d at 427. For the reasons noted in

*Williams*, Defendant's assignment of error is overruled. *Id.*

## 2. *No Broader Than Necessary; Reasonable Alternatives*

Defendant next contends that the closure was broader than necessary because banning cell phones would have addressed the State's concerns. Defendant submits that since this reasonable alternative was available, the trial court's order on remand was broader than necessary. We disagree.

The trial court adequately adhered to the second and third *Waller* elements by ensuring that closure of the courtroom was no broader than necessary and *considering* reasonable alternatives. *See Bell v. Jarvis,* 236 F.3d 149, 169 (4th Cir. 2000) ("*Waller* counsels trial courts to consider alternatives to a complete closure of a public proceeding. But . . . *Waller* does not require a trial court . . . to invent and reject alternatives to the proposed closure."); *see also Williams*, 232 N.C. App. at 167, 754 S.E.2d at 428 ("[T]he trial court's supplemental findings do indicate that it *considered* these options. *Waller* does not require more."). The trial court noted the importance of having the family members of Defendant present while testimony was being elicited from McClendon and Kendall. Thereby, it considered and ordered the reasonable alternative of allowing "direct relatives of [Defendant] to stay in the courtroom during those two witnesses." *Williams*, 232 N.C. App. at 167, 754 S.E.2d at 428. More importantly, the trial court only closed the courtroom during the testimony of two witnesses—McClendon and Kendall—to counter the likely prejudice at hand. The trial court's decision was therefore narrowly tailored to achieve the

State's overriding interest of witness safety. *See Waller*, 467 U.S. at 45, 104 S. Ct. at 2215 ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."). Further discounting Defendant's argument on this basis, even after the trial court banned cell phones in the courtroom, one of Defendant's relatives "still had possession of one during [Kendall's] testimony." Accordingly, the trial court appropriately considered the second and third *Waller* elements in rendering its decision on remand. *Id.* at 48, 104 S. Ct. at 2216.

## IV.    Conclusion

Our review leads us to hold that the trial court's order, on remand, complied with the requirements set forth in *Waller*, 467 U.S. at 48, 104 S. Ct. at 2216. The order contained findings of fact supported by competent evidence, and those findings, in turn, adequately underpin its conclusion of law. *Rollins II*, 231 N.C. App. at 453, 752 S.E.2d at 233.

AFFIRMED.

Judges HAMPSON and WOOD concur.